[No. 7504-4-III.   Division Three.   February 24, 1987.]

CLIFF McKILLOP, *Respondent,* v. CROWN ZELLERBACH, INC., *Appellant.*

*P. Dirk Nansen, Nansen & Nansen, Charles C. Gordon, Kathryn E. Sandstrom,* and *Perkins Coie,* for appellant.

*Rodney Reinbold* and *Mansfield, Reinbold & Gardner,* for respondent.

GREEN, J.—This appeal involves the construction of a perpetual timber deed.

Fred Lampkin owned timberland in Okanogan County. In 1945 he conveyed a portion of that land to Mr. Nelson. The deed of conveyance contained the following reservation:

> This conveyance is also given *subject to a reservation to the grantors* herein and to their . . . assigns, *of all of the timber of all species upon all of the land hereinabove described,* together with the perpetual rights to remove the same at such times as said grantors and their successors in interest desire to do so; *the grantee herein having the right,* however, *to use any fir or tamarack on said land* for posts for the fencing and maintenance of fences or poles for corrals upon said land, all such posts or poles *to be cut from timber having a stump diameter of 12 inches or less, unless the timber is dead,* permission being granted to use any such dead timber for such purposes and for domestic use.

(Italics ours.) In 1946 Mr. Lampkin conveyed by perpetual timber deed his reserved timber rights to Biles–Coleman Lumber Company, making use of the exact Lampkin/Nelson reservation language. Both original contracting parties are deceased. Crown Zellerbach, Inc., is the successor in interest to the rights of Biles–Coleman, these two timber companies having merged. Through a chain of title, Mr. McKillop in 1977 acquired the Nelson land, subject to the reservation. During the 1977–78 timber harvest, Crown logged the property, basing its right to do so on the Lampkin/Biles–Coleman deed.

Mr. McKillop brought an action against Crown alleging that it had exceeded its logging rights under the timber deed. In response, Crown argued that through the Lampkin reservation, Crown acquired the rights to "all of the timber". The trial court agreed with Mr. McKillop and granted him summary judgment. In doing so, the trial court determined that the Lampkin/Nelson deed was ambiguous in that the meaning of the word timber could not be determined from construing the four corners of the instrument. Since the Lampkin/Biles–Coleman deed contained the same language, it was also ambiguous. In the absence of Washington precedent, the court followed the 3–step analysis used to construe timber deeds adopted by the Idaho and Oregon courts. *Arbogast v. Pilot Rock Lumber Co.*, 215 Or. 579, 336 P.2d 329, 72 A.L.R.2d 712 (1959); *Walter v. Potlatch Forests, Inc.*, 94 Idaho 738, 497 P.2d 1039 (1972). These steps are outlined in *Walter v. Potlatch Forests, Inc., supra* at 740:

> the first step to be followed is to look to the instrument itself to ascertain whether sufficiently definitive modifying terms or expressions are employed in connection with the word "timber." . . . [If] the intended meaning is still unclear after scrutiny of the instrument itself, the next step is to consider extrinsic evidence, if any, which tends to show a construction peculiar to the locality or a particular meaning intended by the parties to the transaction. When the meaning of the word "timber" is still uncertain after these two steps have been completed, then, and only then, is it necessary and proper to apply the judicial definition of the word.

Finding no clear expressions in the instrument nor any extrinsic evidence to explain the intentions of the two original contracting parties, the court utilized the third step, *i.e.*, the judicial definition of timber. Using that test, the court determined Crown only had the right to log merchantable timber—trees with a diameter greater than 12 inches. Judgment was entered for the value of the trees wrongfully removed and for treble damages. From that judgment, Crown appeals. We reverse.

Crown contends the court erred in finding the deed's language ambiguous since the court's interpretation is inconsistent with the grantee's right to cut timber under 12 inches for fence posts and use dead timber for any purpose. Crown also contends that even if the deed is found to be ambiguous, extrinsic evidence of other timber deeds should have been admitted to show the meaning of the word "timber". Consequently, Crown contends the trial court erred in applying the third test—the judicial definition of timber. Since we do not find the Lampkin/Nelson deed ambiguous, we need not discuss the admissibility of extrinsic evidence. In our view the intended meaning of the term timber includes "all timber" at the time of the grant and, thus, the imposition of the judicial definition is unnecessary.

In Washington the intent of the parties must be ascertained from reading the contract as a whole, *Leija v. Materne Bros., Inc.*, 34 Wn. App. 825, 829, 664 P.2d 527 (1983), and words are to be given their ordinary meaning. *General Tel. Co. of Northwest, Inc. v. C–3 Assocs.*, 32 Wn. App. 550, 554, 648 P.2d 491 (1982). The Lampkin/Nelson deed expressly reserves to the grantor the right to "all of the timber of all species upon all of the land". The deed expressly gives the grantee the right to use fir or tamarack for limited purposes, *i.e.*, the right to cut trees with a stump diameter of 12 inches or less, and use dead trees for any purposes. This grant is rendered meaningless by the trial court's interpretation that only timber with a diameter greater than 12 inches was reserved. There would be no reason to give the grantee this right unless the original parties intended that "all timber of all species" be reserved to Mr. Lampkin. The deed read as a whole is thus clear and unambiguous.

Reversed.

McINTURFF, C.J., and MUNSON, J., concur.

Review denied by Supreme Court May 5, 1987.