[No. 12321-5-II.   Division Two.   August 15, 1991.]

MARY E. HARRIS, *Respondent,* v. SKI PARK FARMS, INC., *Appellant.*

*James A. Gauthier* and *Law Offices of James A. Swigart; Donna R. Roper, Bradley A. Maxa, Stephanie A. Arend* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*Loren D. Combs* and *Sampson, Wilson & Combs,* for respondent.

PETRICH, J. — Ski Park Farms, Inc. appeals from the trial court's ruling on cross motions for summary judgment[1] that the title to land consisting of an abandoned railroad right of way should be quieted in Mary E. Harris. The issue is whether the owners of property, over which an abandoned railroad right of way existed, relinquished their interest in the property underlying the right of way

---

[1]Harris contends that the trial court resolved the issue based on stipulated facts by entering findings and conclusions. She thus argues that our task on review is simply to determine whether the findings are supported by the stipulation and whether the findings support the conclusions. She is mistaken. The trial court entered its order granting plaintiff's motion for summary judgment which designated the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. RAP 9.12. No reference whatsoever was made to the findings and conclusions. The trial court's summary judgment order is now on review and, for our purposes, the trial court's findings and conclusions are superfluous. *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 21-22, 586 P.2d 860 (1978).

by a conveyance which excepted the right of way. We hold that by excepting the right of way from the conveyance, the owners retained their interest in the property underlying the right of way and we reverse the trial court's summary judgment.

On July 2, 1864, pursuant to the 1864 land grant act, Northern Pacific Railroad Company acquired ownership of a parcel of land legally described as the southeast quarter of the northeast quarter of Section 27, Township 19 North, Range 5 E. (the property). Approximately 10 years later, Northern Pacific conveyed the property to Sam Wilkeson, Jr., by warranty deed, reserving and excepting the disputed right of way property (the right of way) as follows:

> Reserving and excepting, however, from the above described premises, a strip of land two hundred feet wide, extending through the same on the line of the railroad of the said Northern Pacific Railroad Company or on the line of any of its branches to be used for a Right of Way or for other railroad purposes, in case the line of said railroad or any of its branches has been or shall be located on or over said described pieces or parcels of land and premises (being part of the same land granted to the party of the first part by the United States of America under and by virtue of the said Act of Congress approved the 2nd day of July, 1864, and included in the aforesaid mortgage).

Subsequent conveyances of the original parcel passed the property from Hiram Sabin to John and Opal Winkelman on May 10, 1946. The warranty deed from Sabin to Winkelman contained the following language of exception relating to the right of way:

> EXCEPT, the right of way of the Northern Pacific Railway Company . . . and except tracks appropriated by Northern Pacific Railway Company in Cause No. 74807 . . ..

Burlington Northern Railroad Company acquired Northern Pacific's interest in the right of way as a successor in interest. On December 7, 1984, the Interstate Commerce Commission authorized the abandonment of the right of way, which was then abandoned on February 15, 1985 by Burlington Northern. The abandonment was

conducted pursuant to 43 U.S.C. § 912, which provides in pertinent part:

> Whenever public lands . . . have been . . . granted to any railroad company for use as a right of way . . ., and use and occupancy of such lands for such purposes has ceased . . . by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all . . . interest . . . in said lands shall . . . be transferred to and vested in any person . . . to whom . . . title of the United States may have been granted, conveying . . . the whole of the legal subdivision or subdivisions traversed or occupied by such railroad . . . without the necessity of any other or further conveyance or assurance of any kind . . . whatsoever . . ..

Although 43 U.S.C. § 912 states that the abandonment must be declared by an act of Congress, Congress has delegated the authority to regulate the abandonment of rail lines to the Interstate Commerce Commission, which now has exclusive authority to authorize abandonments. *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321-23, 67 L. Ed. 2d 258, 101 S. Ct. 1124 (1981). When Burlington Northern abandoned the right of way on February 15, 1985, Opal Winkelman, individually, and Opal Winkelman, Joan Nelson, and Mary Eytinge, as trustees of the John C. Winkelman Family Trust (Winkelman), held fee title to the "legal subdivision or subdivisions traversed or occupied by" the right of way. Thus, at the time of abandonment, title to the right of way vested in Winkelman. However, Winkelman was not aware of the abandonment or the vesting of title.

On April 23, 1987, Winkelman sold approximately 60 acres of the property to Ski Park Farms, Inc., for $143,500. On July 24, 1987, Harris entered into a real estate purchase and sale agreement with Winkelman for the purchase of property located within two government quarter sections, parts of which were bisected by the railroad right of way, resulting in three small parcels bounded by either roads, a creek, section lines or the right of way. The total sale price was $7,000. Harris, who

drafted the legal description, included the following language: "excepting the Northern Pacific railroad right of way easement."

The sale closed on October 29, 1987. Prior to closing of the Harris purchase, the preliminary commitment for title insurance and all other closing documents, including the deed, were reviewed both by Harris and by an attorney on her behalf. The title policy and the deed included the following exception: "excepting therefrom right of way of the Burlington Northern (Formerly Northern Pacific) Railway Company." Then, on February 24, 1988, Winkelman, by quitclaim deed, conveyed to Ski Park Farms, Inc., the fee interest in the abandoned right of way property in close proximity to Ski Park's property.

In reviewing a summary judgment, this court engages in the same review as the trial court. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 719 P.2d 120 (1986). Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c); *Hontz v. State*, 105 Wn.2d 302, 714 P.2d 1176 (1986).

■■ The issue here is construction of the Winkelman to Harris deed. The construction of a deed generally is a matter of law for the court. *Donald v. Vancouver*, 43 Wn. App. 880, 719 P.2d 966 (1986). In construing a deed, the intent of the parties controls; particular attention is paid to the intent of the grantor when giving meaning to the entire language of the deed. *Carr v. Burlington Northern, Inc.*, 23 Wn. App. 386, 597 P.2d 409 (1979). The intent must be ascertained from reading the deed as a whole, and the words are to be given their ordinary meaning. *McKillop v. Crown Zellerbach, Inc.*, 46 Wn. App. 870, 873, 733 P.2d 559, *review denied*, 108 Wn.2d 1015 (1987).

■ Harris's primary position is that the term "right of way" is per se ambiguous, and that parol evidence must

be employed to resolve the ambiguity. *Zobrist v. Culp*, 95 Wn.2d 556, 627 P.2d 1308 (1981). She also invokes the rule of deed construction that ambiguities must be interpreted most favorably to the grantee and most strictly against the grantor. *Carr v. Burlington Northern, Inc.*, *supra*. However, that rule of construction is not helpful here because it was Harris, the grantee, who prepared the purchase and sale agreement containing the reference to the exception of the "right-of-way easement." The ambiguity in the term "right of way" must be interpreted equally favorably and detrimentally against both Harris and Winkelman.

■ Harris argues that the exception in the deed applied only to a railroad easement over the property described, and that since the easement was abandoned, she then owned the fee interest in the property. She relies on the language in the purchase and sale agreement, which excepted "the Northern Pacific railroad right-of-way easement." Her reliance on the purchase and sale agreement is misplaced. Provisions of a real estate contract and sale agreement and all prior negotiations merge into the deed delivered and accepted in fulfillment of the earlier contract. *Black v. Evergreen Land Developers, Inc.*, 75 Wn.2d 241, 248, 450 P.2d 470 (1969).

■ An exception in a deed is a clause that withdraws from its operation some part of the thing granted and which otherwise has passed to the grantee under the general description. *Studebaker v. Beek*, 83 Wash. 260, 265, 145 P. 225 (1915). The ambiguity that must be solved is what Winkelman intended to except from the sale to Harris. The term "right of way" has indeed been used to denote a number of different interests in property. In the context of rights of way created by the 1864 land grant act and subsequent similar grants, the interest received by railroad companies before 1871 was referred to as a "limited fee, with right of reverter", while that received after 1871 was referred to as an "exclusive use easement". *Vieux v. East Bay Regional Park Dist.*, 906 F.2d 1330,

1332-35 (9th Cir. 1990). However, the confusion as to the meaning of the term "right of way" need not be resolved because at the time of the conveyance to Harris, the right of way no longer existed.

The deed stated Winkelman's intent to except from the sale to Harris the "right of way of the Burlington Northern . . .." We conclude that Winkelman intended to reserve whatever interest in the right of way they owned. Although not known to Winkelman, the right of way had been abandoned and Winkelman now owned all interest in the property where the right of way had previously existed. If the conveyance to Harris was intended to transfer the property where the right of way had existed, the exception language was superfluous.

We are satisfied that Winkelman intended to reserve the property where the abandoned right of way traversed the quarter sections Winkelman conveyed to Harris. The later conveyance from Winkelman to Ski Park vested title to the abandoned right of way property in Ski Park. The court erred in quieting title to the abandoned right of way property in Harris.

Reversed and remanded with instructions to enter summary judgment quieting title in Ski Park Farms, Inc., to that disputed portion of the abandoned right of way property described in Winkelman's quitclaim deed to Ski Park Farms, Inc.

WORSWICK, C.J., and REED, J. Pro Tem., concur.

Review granted at 118 Wn.2d 1001 (1991).