[No. 58600-4. En Banc. February 11, 1993.]

MARY E. HARRIS, *Petitioner*, v. SKI PARK FARMS, INC., *Respondent*.

728

*Sampson & Wilson, Inc., P.S.,* by *Susan Rae Sampson* and *Duncan C. Wilson,* for petitioner.

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* by *Bradley A. Maxa, Donna R. Roper,* and *Stephanie A. Arend,* for respondent.

SMITH, J. — Petitioner Mary E. Harris asks for review of a decision of the Court of Appeals reversing the trial court's summary judgment which quieted title in petitioner to a parcel of property burdened with a railroad right of way. The Court of Appeals remanded to the Superior Court with instructions to enter summary judgment quieting title in Respondent Ski Park Farms, Inc. We granted review and affirm the Court of Appeals.

The single issue before the court in this case is whether the Court of Appeals erred in granting summary judgment in favor of Respondent Ski Park Farms, Inc., and ruling that a statutory warranty deed from its predecessor in title, Winkelman, to Petitioner Harris reserved or excepted a fee interest, and not merely an easement, in the abandoned railroad right of way property.

On July 2, 1864, pursuant to the 1864 Land Grant Act,[1] Northern Pacific Railroad Company (Northern Pacific) acquired ownership to a parcel of land described in the original handwritten conveyance as "the East half of the North East quarter of section twenty-seven (27) of Township nineteen (19) North, range five (5) East of the Willamette Meridian."[2] Petitioner Harris in her brief refers to the property as the "southeast quarter of the northeast quarter of Section 27, Township 19 North, Range 5 E."[3] On August 12, 1876, the Northern Pacific Railroad Company, by deed, conveyed certain property in Pierce County to Samuel Wilkeson, Jr. The

---

[1] Land Grant Act of 1864, 13 Stat. 365.

[2] Clerk's Papers, at 182.

[3] Brief of Petitioner, at 4. This is consistent with the legal description in the title report dated November 10, 1987. Clerk's Papers, at 255.

deed included the legal description of the disputed property and contained an exception as follows:

> [The] East half of the North East quarter of section twenty seven (27) of Township nineteen (19) North, range five (5) East of the Willamette Meridian. . . .
>
> [R]eserving and excepting, however, from the above described premises *a strip of land two hundred feet wide, extending through the same on the line of the railroad* of the said Northern Pacific Railroad Company or on the line of any of its branches, *to be used for a right of way*, or for other railroad purposes, in case the line of said railroad or any of its branches has been or shall be located on or over said described pieces or parcels of land and premises, (being part of the same land granted to the party of the first part by the United States of America under and by virtue of the said Act of Congress, approved the second day of July 1864, and included in the aforesaid mortgage,) together with all and singular, the improvements waters, water courses rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in any wise appertaining, and the reversions and remainders, rents issues and profits thereof and all the estate, rights title interest, profits claim and demand whatsoever, of them the parties of the first and second parts in law equity or otherwise, howsoever of in and to the same and every part thereof. . . .[4]

(Italics ours.)

The trial court in its order granting summary judgment[5] and the Court of Appeals in its opinion[6] use the same legal description used by appellant and substantially the same language of the exception. However, the tax deed relied upon by Petitioner Harris identifies the property as "[t]hat portion of the northeast quarter of the northeast quarter of Section 27 township 19 north range 5 east lying southeasterly of Orting-South Prairie Highway Except railroad right of way Easement of record."[7]

---

[4]Clerk's Papers, at 182. The language is transcribed from a copy of the original handwritten deed included in the Clerk's Papers, the original of which is on file in volume 5 of Deeds, Pierce County, at 351-54.

[5]Clerk's Papers, at 346.

[6]*Harris v. Ski Park Farms, Inc.*, 62 Wn. App. 371, 814 P.2d 684 (1991).

[7]Clerk's Papers, at 84.

Subsequent conveyances of the parcel passed the property from Hiram O. and Ethel E. Sabin to John J. and Opel V. Winkelman on May 10, 1946.[8] The warranty deed contained the following legal description:

[T]he northeast quarter of southeast quarter, and that part of the southeast quarter of northeast quarter of Section Twenty-seven (27), Township Nineteen (19) North, Range Five (5) East of the Willamette Meridian, lying east of the South Prairie Creek:

*EXCEPT the right of way of the Northern Pacific Railway Company* . . . and EXCEPT tracts appropriated by Northern Pacific Railway Company in Cause No. 74807 . . . and Pierce County in . . . Cause No. 44906.[9]

(Italics ours.) Petitioner Harris acquired the property by a tax deed dated December 20, 1983, from the Pierce County Assessor-Treasurer. That deed described the property as:[10]

Parcel No. 05-19-27-1-006

That portion of the northeast quarter of the northeast quarter of Section 27 township 19 north range 5 east lying southeasterly of Orting-South Prairie Highway Except railroad right of way Easement of record.

Burlington Northern Railroad Company (Burlington Northern) acquired Northern Pacific's interest in the right of way.[11] On December 7, 1984, the Interstate Commerce Commission authorized Burlington Northern to abandon the right of way. It was abandoned by Burlington Northern on February 15, 1985,[12] pursuant to 43 U.S.C. § 912, which provides:

Whenever public lands of the United States have been . . . granted to any railroad company for use as a right of way for

---

[8]Clerk's Papers, at 200. The record does not indicate intervening conveyances prior to Sabin's conveyance to Winkelman.

[9]Clerk's Papers, at 303.

[10]Clerk's Papers, at 84.

[11]Clerk's Papers, at 22. The record does not indicate the date of this acquisition.

[12]Clerk's Papers, at 248.

its railroad . . . and use and occupancy of said lands for such purposes has ceased . . . by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon, all right, title, interest, and estate of the United States in said lands shall, . . . be transferred to and vested in any person . . . to whom . . . title of the United States may have been . . . granted, *conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad . . . without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever . . ..*[13]

At the time of abandonment, Ms. Opel V. Winkelman and the Winkelman Family Trust (Winkelman) held title to the land subject to the right of way. Although Winkelman was not aware that the right of way had been abandoned, pursuant to 43 U.S.C. § 912 title to the right of way vested in Winkelman upon its abandonment.

On April 23, 1987, Winkelman by real estate contract conveyed 60 acres of the parcel (lot 6) to Ski Park Farms (Ski Park) for $143,500.[14] On July 24, 1987, Ms. Mary E. Harris (Harris) entered into a purchase and sale agreement with Winkelman for two parcels of the property, one of which was bisected by the right of way. The sale price was $7,000. Ms. Harris prepared the legal description of the property for the purchase and sale agreement, signed by Winkelman, which included the following description:[15]

> All of that portion of tax parcel #05-19-27-1-003 lying between State Route 162 (Pioneer Way) and the South Prairie-Carbon River Road *excepting the Northern Pacific Railroad right-of-way easement.*
> All of that portion of tax parcel #05-19-26-2-007 lying between the South Prairie Creek and the South Prairie-Carbon River Road *excepting the Northern Pacific railroad right-of-way easement.*

(Italics ours.)

---

[13](Italics ours.) 43 U.S.C. § 912.

[14]Clerk's Papers, at 201. The contract reserved "a 30 foot non-exclusive easement for ingress, egress and utilities. . . ." The document in the file is not signed, but a declaration asserts that the transaction was executed. That assertion is not contested. Clerk's Papers, at 216.

[15]Clerk's Papers, at 245. The document referred to a sketch which was attached.

The sale to Ms. Harris closed on October 29, 1987. The closing documents, including the deed and preliminary title insurance, were reviewed by Ms. Harris and her attorney prior to closing. The statutory warranty deed included the following descriptions:

PARCEL A:

That portion of the West Half of the Northwest quarter of section 26, Township 19, North range 5 East, Willamette Meridian, Pierce County, Washington lying, Southeasterly of South Prairie Creek and Northwesterly of South Prairie-Carbon River County Road, *Excepting there from right of way of the Burlington Northern (Formerly Northern Pacific) Railway Company.*

PARCEL B:

That portion of the Southeast Quarter of the Northeast Quarter of Section 27, Township 19, North Range 5 East of the Willamette Meridian, Pierce County, Washington, which lies Southeasterly of the Southeasterly margin of State Route 162 (Pioneer Way) and northwesterly of South Prairie-Carbon River County Road, *Excepting there from right of way of the Burlington Northern (formerly Northern Pacific) Railway Company.*[16]

Situate in Pierce County, Washington.

SUBJECT TO Easements, Restrictions, Reservations, Conditions, and Provisions of record.

(Italics ours.)

On February 24, 1988, Winkelman by quitclaim deed conveyed its interest in the right of way to Ski Park, reserving to Winkelman "a 30 foot non-exclusive easement for ingress[,] egress and utilities. . . ."[17] The deed conveyed:

That portion of the Burlington Northern Railroad Company's (formerly Northern Pacific Railway Company) McMillan to Buckley, Washington Branch Line right-of-way, now abandoned, located upon, over and across section 27, Township 19 North Range 5 East, W.M., described as follows:

All that portion of said Railroad Company's 400 foot wide Branch Line right-of-way being 200 feet on each side of said Main Track centerline in the North half of the Southeast quarter of said Section 27, lying Northerly of the West production of the South line of Lot 6 of Survey No. 8701200255, recorded January 2, 1987, and South of the North line of said North half of the Southeast quarter of said Section 27.

---

[16]Clerk's Papers, at 207, 255.

[17]Clerk's Papers, at 212-13.

Also all that portion of said Railroad Company's 200 foot wide Branch Line right-of-way being 100 feet on each side of said Main Tract centerline in the Southeast quarter of the Northeast quarter of said Section 27, lying North of the south line of said Southeast quarter of the Northeast quarter of said Section 27, and lying South of North line of said Southeast quarter of the Northeast quarter of said Section 27.

Additional Terms and conditions: see schedule A, attached.

. . . .

SCHEDULE A

EASEMENT AND RESERVATION

The sellers herein further RESERVE unto themselves, their heirs, successors and assigns a 30 foot non-exclusive easement for ingress[,] egress and utilities along the South line of which is the West Production of the South line of lot 6 of survey No. 8701200255, for the benefit of Lots 4 and 5 of said survey and each and every subdivision thereof.

Said easement may also be conveyed by the sellers herein to each and every lot owner between the Carbon River and the South line of Lot 6 of said survey or any future reciprocal easement agreements.

On March 10, 1988, in a third amended complaint, Petitioner Harris brought an action against Ski Park to quiet title to the right of way property.[18] Ski Park filed a motion for summary judgment and Ms. Harris filed a cross motion for summary judgment to quiet title. On July 5, 1988, Judge E. Albert Morrison, Pierce County Superior Court, denied both motions, concluding that the matter presented factual questions which could not be resolved on summary judgment.[19] Both parties filed motions for reconsideration. On July 22, 1988, the court heard the motions. At that time, counsel for both parties agreed that all material facts in the case were before the court.[20]

---

[18]Clerk's Papers, at 135. Petitioner Harris and 39 other plaintiffs (Citizens Against the Trail) initially filed a quiet title action on February 20, 1987. Ski Park was joined as a defendant with an interest in the subject property. Since the claims between Ms. Harris and Ski Park were unlike the claims of the other parties, the trial court bifurcated the action. Only Petitioner Harris is a party before this court. Clerk's Papers, at 173.

[19]Report of Proceedings, at 64.

[20]Report of Proceedings, at 108.

The trial court later on September 7, 1988, granted summary judgment quieting title in Petitioner Harris.[21] The court considered the declarations of several persons. Clark R. McGowan (McGowan), a real estate broker, was Winkelman's representative in the sale. He declared that no verbal or written representation was made to convey the right of way to Harris and that the exception language clearly showed intent not to convey the right of way.[22] McGowan employed John Becker (Becker), a professional land surveyor, to draft the legal description in the deed. Becker declared that Winkelman expressed no intention to reserve a fee interest in the right of way, that the exception language was to recognize that Burlington Northern had and might still have an interest in the right of way, and that if he had been instructed to prepare a deed that reserved a fee interest in the right of way, he would not have used the language that appears in the deed.[23]

The declaration of Winkelman stated that it would not have quitclaimed the right of way to Ski Park if it believed the property had already been conveyed to Ms. Harris and that it did not sell any ownership rights to the right of way property to her.[24] However, Ms. Harris in an unsigned declaration asserted that it was her intention to acquire a fee interest in the property formerly subject to the right of way, and that it was her understanding that she was acquiring the underlying fee in the right of way from Winkelman.[25] We can give no credence to the declaration because it was not signed and contained the notation "Original to be filed when signature obtained".[26] The record before us does not contain the signed document.

---

[21]Clerk's Papers, at 344.

[22]Clerk's Papers, at 259.

[23]Clerk's Papers, at 266.

[24]Clerk's Papers, at 216.

[25]Clerk's Papers, at 261.

[26]Clerk's Papers, at 265.

The parties stipulated before the trial court that there were no facts material to resolution of the motions for summary judgment which were not before the court.[27]

On appeal, the Court of Appeals, Division Two, reversed the trial court and quieted title in Ski Park. The court held that in the conveyance to Petitioner Harris, Winkelman intended to "reserve whatever interest in the right-of-way they owned." The court noted that "[a]lthough not known to Winkelman, the right of way had been abandoned and Winkelman now owned all interest in the property where the right-of-way had previously existed." It further stated that "[i]f the conveyance to Harris was intended to transfer the property where the right of way had existed, the exception language was superfluous."[28] The court concluded that:[29]

> [W]inkelman intended to reserve the property where the abandoned right of way traversed the quarter sections Winkelman conveyed to Harris. The later conveyance from Winkelman to Ski Park vested title to the abandoned right of way property in Ski Park. *The court erred in quieting title to the abandoned right of way property in Harris.*

The court then remanded to the trial court with instructions to enter summary judgment quieting title in Ski Park "to that disputed portion of the abandoned right of way property described in Winkelman's quitclaim deed to Ski Park Farms, Inc."

On December 3, 1991, this court granted review.

Petitioner Harris claims that she acquired from Winkelman a fee interest in the right of way. She acknowledges that the 1987 warranty deed from Winkelman to her contains the clause "excepting there from right of way of the Burlington Northern (formerly Northern Pacific) Railway Company." However, she contends that this excepts merely an easement and not the underlying fee interest. She fur-

---

[27]Report of Proceedings, at 96, 97, 99, 108.

[28]*Harris v. Ski Park Farms, Inc.*, 62 Wn. App. 371, 377, 814 P.2d 684 (1991).

[29]*Harris*, at 377.

ther contends that abandonment of the right of way by Burlington Northern in 1985 by operation of law resulted in her acquisition of the fee interest in the right of way. Ski Park claims a fee interest in the right of way through its 1988 quitclaim deed from Winkelman. It contends that the exception in the warranty deed from Winkelman to Harris excepted a fee interest in the right of way; and that the subsequent quitclaim deed from Winkelman to Ski Park thus gave Ski Park the fee interest in the right of way.

Summary judgment is appropriate "if the pleadings, depositions, . . : together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[30] A material fact is one upon which the outcome of the litigation depends.[31] The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.[32] On review of summary judgment an appellate court engages in the same inquiry as the trial court.[33]

The term "right of way" may mean a "mere right of passage over a tract, and sometimes to describe the strip of land which railroad companies purchase, or otherwise compulsorily acquire, upon which to construct their railroad."[34] The term "easement" means a "right, distinct from ownership, to use in some way the land of another, without compensation".[35]

[30]CR 56(c).

[31]*Jacobsen v. State,* 89 Wn.2d 104, 569 P.2d 1152 (1977).

[32]*Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982).

[33]*Marincovich v. Tarabochia,* 114 Wn.2d 271, 787 P.2d 562 (1990).

[34]*Morsbach v. Thurston Cy.,* 152 Wash. 562, 568, 278 P. 686 (1929).

[35]*Olympia v. Palzer,* 107 Wn.2d 225, 229, 728 P.2d 135 (1986).

■ "A conveyance of a right-of-way to a railroad may be either in fee simple or may be an easement only."[36] "The interpretation of such a deed to determine its effect is a mixed question of fact and law. It is a factual question to determine the intent of the parties. Then we must apply the rules of law to determine the legal consequences of that intent."[37]

This court in *Morsbach v. Thurston County* stated that a railroad right of way is more than an easement.[38] But that statement was clarified in *Swan v. O'Leary*, which stated that the intention of the parties to the conveyance is of paramount importance and must ultimately prevail in a given case.[39] In determining the intent of the parties, courts have considered whether the consideration was substantial or nominal, whether the deed conveyed a strip or tract of land and limited its use to a specific purpose, whether the deed contained a habendum clause, and whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor.[40] When the granting clause of a deed conveys a right of way to a railroad, this court has usually concluded that the deed passes an *easement* and not a *fee with a restricted use*:

> [I]t is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.[41]

---

[36]*Veach v. Culp,* 92 Wn.2d 570, 573, 599 P.2d 526 (1979).

[37]*Veach,* at 573.

[38]*Morsbach v. Thurston Cy.,* 152 Wash. 562, 278 P. 686 (1929).

[39]*Swan v. O'Leary,* 37 Wn.2d 533, 225 P.2d 199 (1950).

[40]*Swan v. O'Leary, supra.*

[41]*Veach v. Culp,* 92 Wn.2d 570, 574, 599 P.2d 526 (1979) (quoting *Swan v. O'Leary, supra*). *See King Cy. v. Squire Inv. Co.,* 59 Wn. App. 888, 801 P.2d 1022 (1990) (Washington cases show a strong tendency to consider such rights of way as easements).

In *Veach v. Culp*,[42] the court reiterated the "well established principle" that "we must look to the actual use being made of . . . [the] easement in light of the rule that the servient owner retains the use of the easement so long as that use does not materially interfere with the use by the holder of the easement."[43] The plaintiffs in that case sought removal of a chain link fence blocking their access along a railroad right of way which crossed their property. The railroad made minimal use of its track. The court concluded that because of the railroad's limited use of the easement, the plaintiffs, as holders of the subservient estate, were entitled to use the right of way in such a manner that it would not materially interfere with the railroad's use of it.

■ Both Petitioner Harris and Ski Park agree that this case involves an interpretation of deeds problem. The interpretation of a right of way deed is a mixed question of fact and law.[44] A court should construe a deed grant in a manner which gives effect to the intent of the parties.[45] The intent of the parties is to be derived from the entire instrument and, if ambiguity exists, the situation and circumstances of the parties at the time of the grant are to be considered.[46]

Since both Harris and Ski Park filed motions for summary judgment, the facts must be reviewed in the light most favorable to the nonmoving party in considering each motion.

I

SKI PARK MOTION FOR SUMMARY JUDGMENT

Ski Park argues that in the grant from Winkelman to Ms. Harris, it was the parties' intent to except a fee interest in

---

[42]92 Wn.2d 570, 599 P.2d 526 (1979).

[43]*Veach*, at 575.

[44]*Veach v. Culp, supra; Roeder Co. v. Burlington Northern, Inc.,* 105 Wn.2d 567, 716 P.2d 855 (1986).

[45]*Zobrist v. Culp,* 95 Wn.2d 556, 627 P.2d 1308 (1981).

[46]*Zobrist.*

the right of way and not merely an easement and that Winkelman therefore subsequently quitclaimed to Ski Park a fee interest in the right of way. In support of its position, Ski Park argues (1) that the terms "excepting" and "right of way" except a fee interest, (2) that because Winkelman owned the right of way in fee at the time of the grant to Ms. Harris, the deed excepted a fee interest, and (3) that the doctrine of merger prevents use of the purchase and sale agreement to interpret an ambiguity in the deed.

Ski Park cites an early case to define the term "exception" as a "clause in a deed which withdraws from its operation some part of the thing granted, and which would otherwise have passed to the grantee under the general description [and] [t]he part excepted is in existence at the time of the grant, and remains . . . unaffected by the conveyance."[47] Using this definition, it argues that use of the term "excepting" necessarily prevents the grantee, Ms. Harris, from obtaining the entire fee interest in the property conveyed because Northern Pacific reserved a right of way, within its ordinary meaning, and because, before signing, Ms. Harris and her attorney reviewed the closing documents which made no reference to an easement.

An easement is a burden on the land and an interest in land.[48] The term "excepting" arguably could have been used by the parties to express their understanding that, although Ms. Harris was receiving a fee interest, her rights were not plenary, but subject to an easement. This would be consistent with Ms. Harris' assertion that she thought the deed was excepting only an easement and that she was in fact acquiring the underlying fee to the railroad right of way, but this assertion is not properly before us.[49]

---

[47]*Biles v. Tacoma, O. & G.H.R.R.*, 5 Wash. 509, 32 P. 211 (1893). *See also Studebaker v. Beek*, 83 Wash. 260, 265, 145 P. 225 (1915).

[48]*Kesinger v. Logan*, 113 Wn.2d 320, 779 P.2d 263 (1989) (an easement is an interest in land within the purview of the conveyance statute).

[49]Clerk's Papers, at 265. We cannot consider this assertion because it is contained only in an unsigned declaration.

The deed from Northern Pacific to Wilkeson did not explicitly reserve a fee. The right of way thus arguably could be considered as either a fee interest or simply an easement. The deed description of the right of way ("a strip of land two hundred feet wide") and its purpose ("to be used for a right of way, or for other railroad purposes") would ordinarily create an easement only and not a fee simple interest.[50] This is inconsistent with Ski Park's arguments that Northern Pacific reserved a fee and that the common meaning of a right of way is a fee interest. Similarly, the fact that Ms. Harris and her attorney reviewed the closing documents and did not object to lack of reference to an easement does not necessarily support Ski Park's conclusion that a fee was excepted. Further, the deed was prepared by Winkelman's agent, Becker, who stated that if he had been instructed to reserve a fee interest, he would not have used the language used in the deed. This assertion, of course, is speculation and cannot of itself be used to establish the intent of Winkelman.

Burlington Northern abandoned the right of way in 1985, 2 years prior to Winkelman's conveyance to Ms. Harris. Ski Park argues that if the exception clause is interpreted as withholding only an easement, nothing would be withheld because the right of way no longer existed and Winkelman held the entire parcel in fee at the time it conveyed to Harris. The Court of Appeals, in granting summary judgment in favor of Ski Park, also focused on abandonment of the right of way. The Court of Appeals concluded that since the right of way was no longer in existence, Winkelman intended to reserve in fee the property where the right of way once existed. The court stated that its conclusion as to Winkelman's intent was necessary because to hold otherwise would make the exception language "superfluous". However, that language would be superfluous only if Winkelman intended to except an easement knowing that an easement no longer existed. Since Winkelman did not know of the

[50]*Veach,* at 574.

abandonment (and the resulting fee interest), it cannot be said with certainty that it intended to reserve the fee interest in the right of way. This court has held that the intent of the parties must prevail. The real estate contract between Winkelman and Ski Park dated April 23, 1987, which antedates the October 29, 1987, statutory warranty deed to Petitioner Harris, at least provides some support to a conclusion that Winkelman intended to reserve a fee interest in the railroad right of way, notwithstanding the confusion created by the language in the purchase and sale agreement prepared by Petitioner Harris.

Ski Park finally argues that, under the doctrine of merger, the purchase and sale agreement merged into the deed. The trial court, in granting summary judgment in favor of Ms. Harris, relied on the language of the purchase and sale agreement. However, the Court of Appeals held that the purchase and sale agreement was not controlling because it merged into the deed. Both Ski Park and the Court of Appeals rely on *Black v. Evergreen Land Developers*.[51] However, that case recognized that there were exceptions to the merger doctrine. This court has held that where the intent of the parties is not clearly expressed in the deed, courts may consider parol evidence.[52] In order to determine the intent of the parties, extrinsic evidence is admissible as to the entire circumstances under which a contract is made.[53]

■ This court has adopted the "context rule" which succinctly stated is that "extrinsic evidence is admissible as to the entire circumstances under which [a] contract [is] made, as an aid in ascertaining the parties' intent", specifically adopting the Restatement (Second) of Contracts §§ 212, 214(c) (1981).[54]

---

[51] 75 Wn.2d 241, 450 P.2d 470 (1969).

[52] *Roeder Co. v. Burlington Northern, Inc.*, 105 Wn.2d 269, 714 P.2d 1170 (1986).

[53] *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990).

[54] *Berg*, at 667, 668.

This court in *Berg v. Hudesman*[55] rejected "the theory that ambiguity in the meaning of contract language must exist before evidence of the surrounding circumstances is admissible" and overruled cases to the contrary.[56]

The purchase and sale agreement in this case may be considered as some evidence of the circumstances of the parties at the time of the grant. Even considering, in the light most favorable to Ms. Harris, that both Winkelman and Harris signed the purchase and sale agreement, a conclusion that the parties intended to except only an easement and not a fee interest ("excepting the Northern Pacific railroad right of way easement") is tenuous, at best.

Applying the rules on summary judgment, the undisputed facts in this case and the law favor summary judgment for Respondent Ski Park Farms.

## II
### HARRIS MOTION FOR SUMMARY JUDGMENT

Petitioner Harris' position is that the deed excepted only an easement and since the easement was extinguished by the abandonment, she acquired a fee interest in the entire parcel. She argues that the parties intended to except an easement and not a fee interest in the right of way and that an ambiguous deed should be interpreted in favor of the grantee. She further contends that the Court of Appeals erred in granting summary judgment in favor of Ski Park by concluding that the right of way had been abandoned when Winkelman did not even know of the abandonment at the time it granted the property to her.

To support her position that the parties intended to except an easement, petitioner argues that she used the term "easement" in the purchase and sale agreement, which was signed by Winkelman; that the phrase "railroad right of way" historically reserved an easement; and the language in the deed reflects the historical interpretation of the phrase. She fur-

---

[55]115 Wn.2d 657, 801 P.2d 222 (1990).

[56]*Berg*, at 669.

ther argues that her quiet title action was known to Winkelman and that was evidence that both parties knew that Harris intended to acquire the fee interest in the right of way. She also claims that because Winkelman did not know of abandonment of the right of way by the railroad, it could not have intended to except a fee interest it did not know it had. Any facts relating to the intent of the parties must be obtained from sources other than Petitioner Harris. Her declaration is unsigned and cannot be considered on the record before us.

Use of the term "easement" in the purchase and sale agreement and the historical interpretation of the phrase "railroad right of way" may provide some indication of Ms. Harris' intent to except only an easement, but it does not lead to the same conclusion on Winkelman's intent. Winkelman has stated that it did not intend to transfer any ownership rights in the right of way to Ms. Harris. If Winkelman knew of her quiet title action, it may indicate some knowledge that Ms. Harris wanted a fee interest, but it does not indicate Winkelman's intent to convey a fee interest. McGowan, seller Winkelman's agent, stated that the sellers gave no indication of an intent to convey the right of way to Ms. Harris at closing or at any time in the future. Although Winkelman did not know the right of way had been abandoned and that it now held reversionary title to it, it meant to reserve under the exception whatever interest it had. Winkelman stated that its understanding of the exception language was that it excepted conveyance of the right of way regardless whether it was an easement or a fee interest. Therefore, viewing the facts in the light most favorable to Ski Park, it cannot be said that the one conclusion reasonable persons could reach is that the parties intended to convey only an easement and not a fee interest.

Petitioner Harris argues that the deed should be construed in favor of the grantee. She states that the facts supporting her contention are that the deed was prepared by Becker, grantor Winkelman's agent; that Becker stated that he was not told to withhold the fee in the conveyance;

and Becker stated that if he had been so instructed, he would have used language different from that used in the deed.

 While ambiguity in a deed is resolved against the grantor,[57] the intent of the parties is of paramount importance.[58] The statutory warranty deed dated October 29, 1987, is not ambiguous. Any ambiguity is created by the language of the July 24, 1987, purchase and sale agreement. Winkelman stated that it did not intend to sell any ownership rights in the right of way. Viewing this fact in the light most favorable to Ski Park, it is reasonable to conclude that Winkelman intended to except a fee interest in the property and not merely an easement.

 Petitioner Harris further argues that because neither party knew the status of the right of way, there was no intent to act as if the right of way had been extinguished and held in fee by Winkelman. However, on the record in this case, Ms. Harris could have known that the right of way was held by Winkelman in fee. Ms. Harris initiated a quiet title action in February 1987, 8 months prior to closing her purchase from Winkelman. In her complaint, she acknowledged that Burlington Northern abandoned the right of way in 1985 and that upon abandonment, the right of way immediately vested in the original grantors or their successors. One may infer that she knew Winkelman held a fee interest in the right of way and she nevertheless agreed to the exception. Petitioner contends that Burlington Northern's claim to the right of way was unsettled at the time of the conveyance. The only support for her contention is a letter she received from the Pierce County Prosecuting Attorney in January 1987 which advised her that Burlington Northern had not abandoned its claim to ownership to the property. Although there is no clear evidence that she had actual knowledge of ownership, she might logically have insisted that Winkelman quitclaim the right of way to her if

---

[57]*Kunkel v. Meridian Oil, Inc.,* 114 Wn.2d 896, 901, 792 P.2d 1254 (1990).

[58]*Swan,* at 535.

she intended to acquire the fee interest in the right of way. This she did not do. As to Winkelman's intent, it stated that it would not have quitclaimed the right of way to Ski Park if it believed that it had already conveyed the property to Ms. Harris. Subsequent acts of a party to a contract are admissible to assist in ascertaining intent.[59] Winkelman's subsequent quitclaim of the right of way to Ski Park, and its prior sale by real estate contract, is consistent with its intent to convey only an easement to Petitioner Harris.

We agree with the Court of Appeals that the trial court erred in granting summary judgment quieting title in Petitioner Harris and that summary judgment should be granted in favor of Respondent Ski Park Farms, Inc., quieting title in it.

From the record in this case, we conclude that the reservation and exception granting a right of way to the Northern Pacific Railroad reserved and excepted a fee interest in the property; and that abandonment of the right of way by the railroad resulted in reversion to the owner of the property (Winkelman), who conveyed by statutory warranty deed a portion of the acreage to Petitioner Harris, reserving a fee interest in the railroad right of way, and conveying the remainder of its property interest by quitclaim deed to Respondent Ski Park Farms, Inc.

We affirm the Court of Appeals and remand the case to the trial court for entry of summary judgment and quiet title in favor of Respondent Ski Park Farms, Inc.

DORE, C.J., and UTTER, DOLLIVER, DURHAM, GUY, and JOHNSON, JJ., concur.

BRACHTENBACH and ANDERSEN, JJ., concur in the result.

Reconsideration denied June 8, 1993.

---

[59] *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 510 P.2d 221 (1973).