[No. 47049-3-I.   Division One.   July 23, 2001.]

JOHN S. LINDBLAD, *Appellant*, v. THE BOEING COMPANY, *Respondent*.

*Ricardo A. Guarnero*, for appellant.

*Russell L. Perisho* and *Kurt R. Walters* (of *Perkins Coie*), for respondent.

AGID, C.J. — John Lindblad appeals the trial court's summary judgment dismissal of his disability discrimina-

tion case against his employer, The Boeing Company. Lindblad argues that summary judgment was improper because there is a genuine issue of material fact about whether Boeing failed in its duty to reasonably accommodate his disability. He also argues that the trial court erred by not considering his discriminatory discharge theory and by rejecting his CR 37 request for discovery abuse sanctions against Boeing. We affirm the summary judgment because there is no evidence that Lindblad's disability requires accommodation, he failed to argue a discriminatory discharge theory to the trial court, and he offers no support for his assertion that the court abused its discretion in ruling on his CR 37 sanctions request.

## FACTS

Lindblad suffers from a migraine headache condition, which he controls with timely ingestion of Ibuprofen. In the late winter of 1998, Lindblad was working as an assembler installer at Boeing's 777 production facility in Everett when he was assigned temporarily to the 737 production facility in Renton. Lindblad and others on his crew worked outside in Renton on an airfield next to large factory buildings. On April 23, 1998, Lindblad was working on an aircraft during his 2:30-11 P.M. shift. Shortly after 10 P.M., Lindblad told his co-workers he was going to "knock off for the night" and left the work area without notifying his supervisor. He rode a company shuttle to his car, which was parked approximately three-quarters of a mile away. Lindblad testified in his deposition that he went to his car because he felt a migraine coming on. He said he was "kind of dizzy and couldn't even really function much at all." It is not clear when he first felt signs of the headache. According to Lindblad, he got into his car, took some Ibuprofen, and rested his head against the side of the car. He did not plan to stay in the car long.

At approximately 10:30 P.M., his crew leader, Paul Wolbaum, discovered Lindblad in his car. Lindblad testified

that he saw Wolbaum and that Wolbaum waved to him, but Wolbaum stated at an Employment Security Department administrative hearing that he observed Lindblad sleeping. The supervisor on duty that evening was Sharon Bevard. Wolbaum contacted Bevard and notified her that Lindblad was sleeping in his car. Bevard asked another supervisor, Ken Thompson, to accompany her and Wolbaum to Lindblad's car to investigate.

Wolbaum returned to the car with Bevard and Thompson. When they looked in, they saw Lindblad lying across the front seat, sleeping. Bevard knocked on the driver's-side window, and Thompson knocked on the passenger-side window. Bevard stated that it took Lindblad "several minutes" to wake up, and he looked "startled" when he did. Lindblad then unlocked and opened his door, and Bevard asked him if he needed medical attention. Lindblad answered "no." Thompson then instructed Lindblad to return to his assigned work area because his shift was not over.

Boeing's human resources office in Renton reported this incident to Heather Hanson, manager of the company's human resources office in Everett. Hanson evaluated the facts and decided to terminate Lindblad's employment for violation of Boeing's "neglect of duty" rule. Hanson stated in a deposition that concealing oneself and sleeping on company time "is a very serious problem for Boeing, and it has historically been a persistent problem." Hanson noted that this problem has arisen because of Boeing's extraordinarily large facilities; it is very easy for employees to find areas in which to conceal themselves and sleep. According to Hanson, Lindblad's case "was treated in the same manner as other cases in which employees have been found concealing themselves for the purpose of sleeping on the job." Boeing routinely terminates employees without warning for sleeping on the job.

While employed at Boeing, Lindblad was a member of the International Aerospace Machinists Union (IAM), District Lodge 751. Lindblad asked the IAM to investigate his termination. The Union investigated, but concluded that

the case lacked "sufficient merit to warrant further action." Lindblad appealed, but the Union affirmed its initial decision.

Lindblad filed suit in King County Superior Court, alleging disability discrimination, wrongful withholding of wages, intentional infliction of emotional distress, and negligent infliction of emotional distress. When Boeing removed the case to United States District Court, Lindblad moved to remand the case to state court. Boeing stipulated to remand on the condition that Lindblad agree to dismiss with prejudice all claims except disability discrimination. The case was remanded for consideration of that issue.

After taking Lindblad's deposition in November 1999, Boeing concluded there was no factual basis for the disability discrimination claim. Accordingly, Boeing's counsel informed Lindblad's original counsel in a January 25, 2000 letter that Boeing would move for summary judgment and seek an award for fees and costs under CR 11 and RCW 4.84.185 unless Lindblad voluntarily dismissed the action. Lindblad's counsel replied that Lindblad would voluntarily dismiss the suit, but later informed Boeing by telephone that Lindblad had changed his mind. Counsel also stated he was withdrawing from the case.

Boeing filed a motion for summary judgment on March 13, 2000. Lindblad, acting pro se, filed a late response and requested in part that the court dismiss his action without prejudice. Boeing did not oppose that request, and the court granted it. Lindblad later retained his current counsel, Ricardo Guarnero, and filed a motion to reopen the case. Boeing did not oppose the motion, and the court set a trial date for September 5, 2000. After further discovery, Boeing again moved for summary judgment in May 2000. Lindblad responded and filed a motion for sanctions under CR 37 for discovery abuse, alleging that Boeing counsel inappropriately limited Heather Hanson's answers during her deposition. The trial court granted Boeing's summary judgment motion, dismissed Lindblad's case, and rejected Lindblad's motion for sanctions. This appeal followed.

## DISCUSSION

When reviewing a grant of summary judgment, we engage in the same inquiry as the trial court.[1] Summary judgment is appropriate only when, after reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party and all questions of law de novo, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2]

█ Under Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, it is unlawful for an employer to discriminate against any person in the terms or conditions of employment or to discharge any employee because of any sensory, mental, or physical disability.[3] An employer's failure to accommodate a disability constitutes discrimination unless the employer demonstrates that accommodation would result in an undue hardship.[4] An accommodation claim presents two issues: (1) whether the employee was disabled within the WLAD's definition, and (2) whether the employer met its affirmative obligation to reasonably accommodate the disability.[5]

█ Here, Boeing concedes that Lindblad has a disability recognized under the WLAD. But to show that Boeing failed to accommodate his disability, Lindblad must establish at least a genuine issue of material fact about whether he notified Boeing that he had a disability that required accommodation, that a specific reasonable accommodation was available, and that the accommodation was medically necessary.[6] If Lindblad makes this showing, then the burden shifts to Boeing to show that Lindblad's proposed

[1] RAP 9.12; *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 737, 844 P.2d 1006 (1993), *cert. denied*, 510 U.S. 1047 (1994).

[2] CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[3] RCW 49.60.180(2).

[4] *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000).

[5] *Id.* at 640.

[6] *Id.* at 643.

accommodation is not feasible. These tests require Lindblad to demonstrate that his disability requires accommodation in order for him to perform his job adequately. We reject Lindblad's reasonable accommodation claim because he has failed to make that showing.

■■ In his deposition, Lindblad himself explained that his disability does not require accommodation. He testified that as long as he has access to his Ibuprofen and takes it within 30 minutes of feeling a migraine headache coming on, he is able to continue working without interruption. Lindblad also stated unequivocally that (1) he routinely carried Ibuprofen with him on the job, (2) there was no Boeing policy or rule that prevented him from doing so, (3) nothing prevented him from having access to his medication as long as he had it with him, and (4) the only reason he did not have Ibuprofen with him when he was found in his car was because he had forgotten it.

In a declaration submitted in response to Boeing's summary judgment motion, Lindblad contends that his deposition testimony was flawed, explaining that during the deposition his migraine condition was "activated by the stress" of the proceeding and he was unable to concentrate. Accordingly, Lindblad attached to his declaration the full transcript of the employment security hearing, which occurred before Lindblad was deposed. Lindblad asserts his testimony at that hearing "gives a full picture of [his] testimony and demonstrates that real factual differences exist between [his] account and [Boeing's]." We disagree.

Relying on his declaration and the employment security hearing testimony, Lindblad explains that he did not have his medicine with him on the night in question because he was assigned to the "high snorkel," an area where "foreign objects" were not allowed for safety reasons. Lindblad also claims that Boeing failed to provide work lockers in Renton and instructed him to store all of his personal belongings in the car. He argues that these facts demonstrate that a jury could find that Boeing had a duty to provide him with "an opportunity to take the minute amount of time loss re-

quired for his medication to take effect without fear of reprisal."

Yet there is still no evidence that Lindblad was unable to carry medication with him while working. Lindblad referred repeatedly during the employment security hearing to a "foreign object damage" policy, which he described as "a very strict policy on working flight line to not be dropping any foreign objects or anything that might damage the aircraft if they're running the engines." But nothing suggests that this policy prevented Lindblad from carrying his medication with him; rather, it appears the policy was merely advisory. Indeed, Lindblad testified that according to the policy, "it's *best* not to carry anything extra than you have to."[7] He also stated that despite the foreign object damage policy, "I'm not saying I don't ever carry my pills, but when I do carry them, I have them only in a small bottle that I can tuck tight in my pocket, I'm not going to lose." Thus, even if we were to consider Lindblad's eleventh-hour submissions in response to Boeing's summary judgment motion, we must still conclude that there is no evidence that Lindblad's condition required accommodation.

Relying on *Goodman v. Boeing Co.*,[8] Lindblad also claims that Boeing had a duty to take "positive steps" to accommodate his disability because they knew about his migraine condition. We agree with Boeing that this characterization of the employer's burden "stretches the duty to accommodate too far" and overlooks the clear evidence that Lindblad's disability does not require accommodation. Indeed, *Maxwell v. Department of Corrections* held that "no duty arises unless there is a need for accommodation."[9] The *Maxwell* court held that where there is no evidence that a disabled employee requires accommodation, it is proper for the trial court to determine that the employer did not

---

[7] (Emphasis added.)

[8] 127 Wn.2d 401, 408, 899 P.2d 1265 (1995).

[9] 91 Wn. App. 171, 180, 956 P.2d 1110, *review denied*, 136 Wn.2d 1022 (1998).

discriminate by failing to accommodate.[10] *Goodman* does not require a different result because that case did not involve a disability that admittedly requires no accommodation.[11]

In sum, we hold that Lindblad has not met his burden of establishing the prima facie elements of a reasonable accommodation claim because no reliable evidence suggests that he required accommodation. Accordingly, his allegations that Boeing employees lack knowledge about accommodation rules and procedures are immaterial.

*Disparate Treatment*

In his complaint Lindblad alleged disability discrimination, wrongful withholding of wages, and intentional and negligent infliction of emotional distress as causes of action. In making his disability discrimination claim, Lindblad alleged generally that his discharge "was a direct result of discrimination prohibited by [the WLAD]." On appeal, Lindblad now attempts to make a disparate treatment argument, contending the trial court "should have recognized a prima facie case of discriminatory discharge due to disability."

The record reflects that in a telephone conference about five months before Boeing filed its summary judgment motion, Lindblad's first attorney agreed with counsel for Boeing that the only claim Lindblad was pursuing in this action was a disability accommodation claim. Boeing's counsel confirmed that representation in a January 25, 2000 letter, stating: "As you and I discussed, there is one remaining claim in this case—a disability accommodation claim." Accordingly, when Boeing moved for summary judgment, it discussed the case only in terms of disability

---

[10] *Id.*

[11] The federal cases Lindblad cites are inapplicable for the same reason. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir. 2000), *cert. granted in part*, 532 U.S. 970 (2001); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997); *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869 (9th Cir. 1989), *cert. denied*, 498 U.S. 814 (1990).

accommodation. Boeing is correct that in Lindblad's responses to the motion there is no "argument devoted to a disparate treatment theory, either in form or substance." Indeed, in his memorandum in opposition to Boeing's motion for summary judgment, Lindblad relied only on a reasonable accommodation theory and stated plainly that "[a]s articulated by Boeing the only legal issue is whether Mr. Lindblad requested 'reasonable accommodation.'"

We will not review an issue, theory, argument, or claim of error not presented at the trial court level.[12] Lindblad argued only a reasonable accommodation theory and never even mentioned disparate treatment throughout all of the proceedings below. We will therefore not consider the disparate treatment theory he presents on appeal.

*CR 37 Motion for Sanctions*

Lindblad moved in the trial court for sanctions for discovery abuse in light of CR 37. A trial court's ruling on a discovery motion is reviewed for abuse of discretion, which occurs where a decision is manifestly unreasonable or based on untenable grounds.[13] On appeal, Lindblad claims the trial court erred in denying his sanctions request because Boeing's counsel directed Hanson not to answer at least 22 questions. Lindblad also claims Boeing's attorney "interrupted and made speaking objections and otherwise objected to questions on the ground of irrelevancy and/or privacy on such subjects as the witness's [sic] income and other discoverable information potentially relevant to bias and/or impeachment."

■■ Lindblad fails to cite any portion of the record to support his contention that the trial court abused its discretion in denying sanctions. He also makes no attempt to explain why the objections were not justified. His "argument" consists of nothing more than a list of references to

---

[12] *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 527, 20 P.3d 447 (2001); RAP 2.5(a). We also note that Lindblad has failed to make an adequate showing that his disability was a substantial motivating factor for his discharge.

[13] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338-39, 858 P.2d 1054 (1993).

case-law principles governing discovery. Lindblad fails even to suggest that the trial court abused its discretion, and we will not make his argument for him.

Affirmed.

COLEMAN and WEBSTER, JJ., concur.