[No. 84048-2.   En Banc.]
Argued May 17, 2011.     Decided August 25, 2011.

MITCH DOWLER ET AL., *Appellants*, v. CLOVER PARK SCHOOL
DISTRICT NO. 400, *Respondent*.

472

*Philip A. Talmadge* and *Emmelyn Hart* (of *Talmadge/ Fitzpatrick*); and *Thaddeus P. Martin IV*, for appellants.

*William A. Coats, Henry A. Saller Jr.,* and *Daniel C. Montopoli* (of *Vandeberg Johnson & Gandara LLP*), for respondent.

*Sarah A. Dunne* and *Nancy L. Talner* on behalf of American Civil Liberties Union of Washington and Washington Employment Lawyers Association, amici curiae.

*Allan K. Marson, Erin McCloskey Maus, Keith L. Wurster, Angela C. Vigil, Amanda T. Kotte,* and *Melinda Laine* on behalf of Council of Parent Attorneys and Advocates Inc., amicus curiae.

*Heather Lynn McKimmie* and *Christopher M. Henderson* on behalf of Disability Rights Washington and The Arc of Washington State, amici curiae.

*Karen Helena Simmonds, Laura Kristine Clinton,* and *Charles A. Chavez* on behalf of Washington Schools Risk Management Pool, amicus curiae.

*Bryan P. Harnetiaux* and *George M. Ahrend* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 J.M. Johnson, J. — Ten special education students and their parents and guardians (Appellants) sued Clover Park School District for intentional torts, outrage, negligence, and unlawful discrimination under chapter 49.60 RCW. Clover

Park moved for a summary judgment dismissing Appellants' claims, arguing that Appellants had not exhausted the administrative remedies available under the Individuals with Disabilities Education Act (IDEA).[1] The trial court granted Clover Park's motion. We reverse and remand Appellants' state tort and unlawful discrimination claims to the trial court. IDEA's administrative exhaustion requirement does not apply to state law claims, nor does Washington State law require exhaustion before filing such claims.

## FACTS AND PROCEDURAL HISTORY

¶2 A group of 10 special education students, along with their parents and guardians, filed a complaint against Clover Park.[2] Alleging several instances of physical, verbal, and psychological abuse by Clover Park educators, as well as discrimination based on their disabilities,[3] they brought claims for intentional torts, outrage, negligence, and unlawful discrimination under chapter 49.60 RCW.

¶3 Clover Park denied most of the allegations in Appellants' complaint and pleaded, as an affirmative defense, that Appellants failed to exhaust their administrative remedies under the IDEA.[4] Clover Park moved for a summary judgment of dismissal of all claims on this basis. In response, Appellants filed a motion to dismiss all claims that could be construed as or related to a request for educational compensation under IDEA for deficiencies in educational services and benefits.[5]

---

[1] 20 U.S.C. §§ 1400-1482.

[2] The original complaint, filed on June 13, 2006, listed only seven special education students and their parents and guardians. Clerk's Papers at 3-19. The complaint was amended three times, solely to name additional appellants. *Id.* at 23-40, 54-71, 74-91.

[3] *See id.* at 305-1084 (containing depositions, declarations from parents and staff, and police reports).

[4] *See* 20 U.S.C. § 1415(*l*).

[5] *See* 20 U.S.C. § 1415(f). Under IDEA, children with disabilities are entitled to a formal administrative complaint process called the "due process hearing" when any party presents a complaint "with respect to any matter relating to the

¶4 The trial court simultaneously granted Clover Park's motion for summary judgment and Appellants' motion to dismiss any IDEA related claims. The motion to dismiss was granted with prejudice. The trial court invited a second round of summary judgment motions to determine if any individual plaintiff had a claim surviving dismissal.

¶5 Appellants moved for reconsideration, arguing that their state law tort and unlawful discrimination claims were not subject to the administrative exhaustion requirement in IDEA. Clover Park filed a second motion for summary judgment, reiterating its argument that Appellants had failed to exhaust administrative remedies. The trial court again ruled for Clover Park.

¶6 Appellants moved for reconsideration a second time and asked the court to stay the case while they sought administrative determinations of whether their claims were indeed encompassed by IDEA. The trial court denied Appellants' second motion for reconsideration and granted Clover Park's second motion for summary judgment. Appellants appealed.

¶7 Awaiting appeal, Appellants filed a citizen's complaint with the Office of Superintendent of Public Instruction (OSPI)[6] to determine if their claims were covered by IDEA. OSPI responded by stating that it could respond only to allegations of violations that occurred in the past year, that it could not determine if the issues Appellants raised had occurred in the past year, and that it could not determine whether the issues Appellants raised were related to the implementation of the students' Individualized Education Program (IEP), a cornerstone of IDEA.[7] OSPI's response stated that the violations it *could* investigate

---

identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). A due process hearing may also address complaints with respect to the placement of a child in an alternative educational setting. 20 U.S.C. § 1415(k).

[6] OSPI is the administrative agency charged with overseeing the enforcement and implementation of IDEA in Washington State. RCW 28A.155.020-.030.

[7] *See* 20 U.S.C. § 1414(d); *see also* 20 U.S.C. § 1401(9).

include "qualifications of staff, improper use of behavioral supports or aversive interventions or failure to provide services outlined in the IEP." Clerk's Papers (CP) at 2285.

¶8 Appellants subsequently discovered that the director of special education for OSPI, Douglas Gill, had testified in a separate case[8] that claims of verbal and physical abuse and discrimination were *not* within OSPI's jurisdiction, and that the alleged actions in that case did not constitute violations of IDEA. Relying on Gill's testimony, Appellants filed a CR 60 motion for relief from judgment, asking the court to vacate its order granting Clover Park's second motion for summary judgment and denying Appellants' second motion for reconsideration. The trial court granted the CR 60 motion. It noted, however, that "[n]othing herein prevents the defendant from renewing its motion for summary judgment." *Id.* at 2430-33. Appellants voluntarily dismissed their appeal of the order granting Clover Park's second motion for summary judgment and denying their second motion for reconsideration.

¶9 Clover Park moved for summary judgment a third time, again arguing Appellants had not exhausted their administrative remedies before filing suit. The trial court granted Clover Park's motion. Appellants timely appealed and successfully petitioned this court for direct review. Order Granting Review (July 7, 2010).

ANALYSIS

¶10 These Appellants are not required to exhaust administrative remedies before filing a civil action under state law. To understand why, we begin with an overview of IDEA, a description of the IDEA due process hearing, and an explanation of IDEA's administrative exhaustion requirement.

---

[8] *Vernon v. Bethel Sch. Dist. No. 403*, No. 07-2-05140-1 (Pierce County Super. Ct., Wash., Feb. 8, 2007).

## A. Brief Overview of IDEA

¶11 The legislation now codified at 20 U.S.C. §§ 1400-1482 (IDEA) was enacted by Congress in 1970 to help address the educational needs of children with disabilities. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009); 20 U.S.C. § 1400(c)(1). It requires states receiving federal funding to make available a "[f]ree appropriate public education" (FAPE)[9] to all children with disabilities residing in the state. 20 U.S.C. § 1412(a)(1)(A). To achieve this end, IDEA requires local school districts to develop an IEP for each child with a disability. 20 U.S.C. § 1414(d).

¶12 An IEP is essentially the plan of action for implementing and assessing an individual child's education. *See id.* It has several mandatory components. For example, the IEP must include a written statement of the child's present academic level, the needs of the child due to his or her disability, measurable goals and instructional objectives for the child, and the specific special education services and supplemental aids to be provided to the child. 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(V).

¶13 Each child's IEP is to be developed, reviewed, and revised as needed by an "IEP Team" charged with working

---

[9] FAPE is a term of art that means "special education and related services" that

    (A) have been provided at public expense, under public supervision and direction, and without charge;
    (B) meet the standards of the State educational agency;
    (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
    (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). The terms "special education" and "related services" are themselves terms of art. The former means "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including—(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(29). The latter means "transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(26).

together to ensure the child receives FAPE. *E.g.*, 20 U.S.C. § 1414(d)(3). The IEP Team consists of the child's parent(s) or guardian(s), at least one special education teacher and one general education teacher, a representative of the local educational agency, an individual who can interpret the instructional implications of evaluation results, other individuals who have knowledge or special expertise regarding the child, and, whenever appropriate, the child. 20 U.S.C. § 1414(d)(1)(B). If the IEP Team is unable to cooperate or does not ensure FAPE, the child's right to FAPE is safeguarded by IDEA's administrative complaint process, the "due process hearing." *See* 20 U.S.C. § 1415(a), (f).

## B. The IDEA Due Process Hearing

¶14 The IDEA due process hearing is a formal administrative complaint process and is available to parties in limited situations. 20 U.S.C. § 1415(f). These situations are as follows: (1) when any party presents a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child"[10] and (2) when there is a complaint with respect to the placement of a child in an alternative educational setting.[11]

¶15 At the IDEA due process hearing, the parties may be represented by counsel and may present evidence, confront and cross-examine witnesses, and compel their attendance. 20 U.S.C. § 1415(h). A hearing officer issues findings and renders a decision with respect to the complaint, which are written and made available to the public. 20 U.S.C. § 1415(h)(4)(A). The hearing officer can order remedies such as compensatory education to make up for the educational services the child should have received in the first

---

[10] 20 U.S.C. § 1415(b)(6)(A).

[11] 20 U.S.C. § 1415(k).

place (e.g., extra tutoring or summer school),[12] increased special education services (e.g., more time with a speech therapist or physical therapist),[13] enforcement of the child's IEP,[14] attorney fees,[15] and reimbursement of the costs of a child's private special education services if the child had not received required special education and related services through public school.[16]

¶16 The due process hearing must be conducted by the state educational agency or by the local educational agency. 20 U.S.C. § 1415(f)(1)(A). If the due process hearing is conducted by a local education agency, any party aggrieved by the agency's findings and decision rendered in such a hearing may appeal the findings and decision to the state educational agency. 20 U.S.C. § 1415(g).

C.  Exhaustion of Administrative Remedies under IDEA and Its Washington Counterpart

¶17 IDEA explicitly requires a party to have exhausted the administrative remedies available through the IDEA due process hearing before filing a civil action under certain federal laws. As 20 U.S.C. § 1415(*l*) states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other *Federal laws* protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws* seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

---

[12] *E.g., Parents of Student W v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994); *Reid ex rel. Reid v. District of Columbia*, 365 U.S. App. D.C. 234, 401 F.3d 516, 518 (2005).

[13] *See* 20 U.S.C. § 1432(4)(E).

[14] *See* 20 U.S.C. §§ 1414-1415.

[15] *See* 20 U.S.C. § 1415(i)(3)(B).

[16] *Forest Grove Sch. Dist.*, 557 U.S. 230.

(Emphasis added) (citations omitted); *see also* 20 U.S.C. § 1415(i)(2); WAC 392-172A-05115(1)-(3). Subsections (f) and (g) of 20 U.S.C. § 1415 refer to the IDEA due process hearing and administrative appeal process referred to above.

■■ ¶18 In Washington, IDEA is implemented by OSPI according to the authority delegated to it by the legislature through chapter 28A.155 RCW. In accordance with RCW 28A.155.090(7), OSPI has promulgated administrative regulations governing the implementation of IDEA in Washington. WAC 392-172A-01000. These regulations mimic the statutory language found in IDEA. *See* ch. 392-172A WAC. In particular, WAC 392-172A-05115(5) mimics the exhaustion of administrative remedies provision found in 20 U.S.C. § 1415(*l*):

> Nothing in this part restricts or limits the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other *federal* laws protecting the rights of students with disabilities, *except that before the filing of a civil action under these laws* seeking relief that is also available under section 615 of the act, the due process procedures under WAC 392-172A-05085 and 392-172A-05165 must be exhausted to the same extent as would be required had the action been brought under section 615 of the act.

WAC 392-172A-05115(5) (emphasis added). "Section 615 of the act" refers to what is now 20 U.S.C. § 1415. *See* 20 U.S.C. § 1415; WAC 392-172A-01020.

■■ ¶19 In sum, both 20 U.S.C. § 1415(*l*) and WAC 392-172A-05115(5) require a party to exhaust the administrative remedies available to them through the IDEA due process hearing before filing a civil action under certain federal laws. To trigger the IDEA due process hearing, the action must pertain to any matter relating to the identification, evaluation, or educational placement of the child; or the provision of an appropriate public education to such child; or to the placement of a child in an alternative educational setting.

D.  **20 U.S.C. § 1415(*l*) and WAC 392-172A-05115(5) Do Not Apply to Civil Actions Arising under State Law**

¶20 We review the meaning of a statute de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In interpreting a statute, our primary objective is to ascertain the legislative body's intent. *See id.* at 9-10. If a statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. *Id.*

¶21 The plain meaning of a statute is discerned from the ordinary meaning of the language at issue, the context in which that provision is found, related provisions, and the statutory scheme as a whole. *Id.* at 9-12. Here, the plain meaning of 20 U.S.C. § 1415(*l*) and WAC 392-172A-05115(5) is to require parties to exhaust the administrative remedies available through an IDEA due process hearing before filing a civil action under certain *federal* laws protecting the rights of children and students with disabilities, but not before filing a civil action under *state* laws. This is evident from the ordinary meaning of the language at issue, the context in which the provisions are found, related provisions, and the statutory scheme as a whole.

¶22 First, 20 U.S.C. § 1415(*l*) plainly states that "before the filing of a civil action under *such laws* . . . the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." (Emphasis added.) "[S]uch laws" refers only to the "rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other *Federal* laws protecting the rights of students with disabilities." *Id.* (emphasis added) (citations omitted). Likewise, WAC 392-172A-05115(5) plainly states that "before the filing of a civil action under *these laws* . . . the due process procedures under WAC 392-172A-05085 and 392-172A-05165 must be exhausted to the same extent as would

be required had the action been brought under section 615 of the act." (Emphasis added.) "[T]hese laws" refers only to "the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other *federal* laws protecting the rights of students with disabilities." *Id.* (emphasis added). Under the ordinary meaning of the language at issue, state law tort and unlawful discrimination claims are not among those civil actions subject to administrative exhaustion under IDEA.

¶23 Second, the context in which these provisions are found is a subchapter of IDEA outlining when an IDEA due process hearing may be held. The IDEA due process hearing may be held only where any party brings a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child"[17] or when there is a complaint with respect to the placement of a child in an alternative educational setting.[18] Civil actions for tort and unlawful discrimination based on state law do not relate to these matters.

¶24 Third, related provisions such as 20 U.S.C. § 1415(i)(2) and WAC 392-172A-05115(1)-(3) imply that administrative exhaustion is not required for causes of action outside the scope of an IDEA due process hearing. These provisions imply that administrative exhaustion is required before a civil action with respect to the IDEA due process hearing itself may be brought in state or federal court.

¶25 Finally, there is no indication from the statutory scheme of IDEA as a whole that it preempts state law claims in any way or requires Appellants to exhaust administrative remedies before filing civil actions under state law. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct. 1187, 173

---

[17] 20 U.S.C. § 1415(b)(6)(A).

[18] 20 U.S.C. § 1415(k).

L. Ed. 2d 51 (2009) (" '[I]n all pre-emption cases . . . we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." ' " (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) (quoting *Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947)))).

¶26 In sum, it is plain that parties are *not* required to exhaust the administrative remedies available through an IDEA due process hearing before filing a civil action under state laws in state court. We so hold.

¶27 Nothing in this opinion prevents Appellants from requesting an IDEA due process hearing to address those matters that are appropriate for an IDEA hearing officer to review while simultaneously seeking relief in court for their claims of tort and unlawful discrimination. An IDEA hearing officer will be able to address how Appellants will be treated in the future with respect to such issues as classroom discipline and the facilitation of movement. Only the court, however, is able to remedy past actions that constitute torts or unlawful discrimination.

E. Clover Park Is Not Entitled to Judgment as a Matter of Law

¶28 We review summary judgment rulings de novo, engaging in the same inquiry into the evidence and issues called to the attention of the trial court. *Harris v. Ski Park Farms, Inc.*, 120 Wn.2d 727, 737, 844 P.2d 1006 (1993); RAP 9.12. A summary judgment will be affirmed if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

¶29 A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 192 P.3d 886 (2008). Judgment as a matter

of law is appropriate where there is no legally sufficient basis for a reasonable jury to find for a party with respect to the issue. CR 50. In reviewing a motion for summary judgment, all facts and reasonable inferences are reviewed in the light most favorable to the nonmoving party. *Steinbach*, 98 Wn.2d at 437.

¶30 Here, the trial court erred by finding no genuine issues of material fact. CP at 3541. There are genuine issues of material fact with respect to Appellants' claims. Reasonable minds could differ on the facts described in the pleadings, depositions, affidavits, and other materials pertinent to deciding a motion for summary judgment. *See id.* at 1-3555; CR 56. Furthermore, there has been no stipulation concerning the facts and Clover Park denies most of the allegations in Appellants' complaint.

¶31 The trial court also erred by holding that judgment as a matter of law was appropriate because Appellants had failed to exhaust administrative remedies. CP at 3541. Judgment as a matter of law is not appropriate because Appellants are not required by IDEA or Washington State law to exhaust the administrative remedies available through an IDEA due process hearing before filing a civil action under state law in state court. We therefore reverse the trial court and remand the case for further proceedings.

F. Attorney Fees

¶32 We briefly address Appellants' request for attorney fees under RCW 49.60.030(2). That provision states:

Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.).

RCW 49.60.030(2). Appellants are not yet entitled to attorney fees under RCW 49.60.030(2), if at all. Unlike the cases in which we granted attorney fees on review under RCW 49.60.030(2), this case has not yet been tried on the merits. *Xieng v. Peoples Nat'l Bank of Wash.*, 120 Wn.2d 512, 844 P.2d 389 (1993); *Allison v. Hous. Auth.*, 118 Wn.2d 79, 98, 821 P.2d 34 (1991). In other words, neither the prevailing party nor the costs of suit have yet been ascertained.

CONCLUSION

¶33 Appellants' state law tort and unlawful discrimination claims are not subject to administrative exhaustion under federal statute or any provision under IDEA or Washington State law. We therefore reverse the trial court and remand for further proceedings. On remand, we emphasize that Appellants' IDEA related claims have been dismissed with prejudice. Thus, the trial court need only consider Appellants' claims of tort and unlawful discrimination under state law. If Appellants prevail on the merits of any of their claims, the court may award only relief that is appropriate for such claims and not relief authorized by the IDEA. However, nothing in this opinion prevents Appellants from separately requesting an IDEA due process hearing to address those matters that are appropriate for an IDEA hearing officer. We reverse and remand for further proceedings consistent with this opinion.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, STEPHENS, and WIGGINS, JJ., concur.