FILED
COURT OF APPEALS
DIVISION II

2015 APR 14 AM 9: 52

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK A. VELASCO and DANIKA E. VELASCO, and the marital community thereof,<br><br>Appellants,<br><br>v.<br><br>DISCOVER MORTGAGE COMPANY; COMMUNITY LENDING, INC.; NORTHWEST TRUSTEE SERVICES, INC.; WELLS FARGO BANK; HSBC BANK USA NATIONAL ASSOCIATION as Trustee for WFMBS 2007-011, WELLS FARGO HOME MORTGAGE, MERSCORP, INC., a Delaware Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; the property located at 136 Sargent Road, Winlock, Washington; DOES 1-1000; ROES 1-20; GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT; NEW ORLEANS RETIREMENT SYSTEM,<br><br>Respondents. | No. 45642-7-II<br><br><br><br>UNPUBLISHED OPINION |

MAXA, P.J. — Mark and Danika Velasco appeal the trial court's dismissal on summary judgment of their multiple claims relating to their efforts to modify the loan on their residence and the attempt to foreclose on the deed of trust securing the that loan. The Velascos filed suit against Wells Fargo Bank, the loan servicer and holder of the promissory note evidencing the loan; Mortgage Electronic Registration System (MERS), the designated beneficiary of the deed of trust; HSBC Bank, the assignee of MERS's beneficial interest in the deed of trust and Wells

Fargo's principal; and Northwest Trustee Services (NWTS), the successor trustee that initiated foreclosure proceedings on the deed of trust.

The Velascos argue that the trial court erred in granting summary judgment because they had valid claims for (1) violation of the Deed of Trust Act (DTA), chapter 61.24 RCW, because NWTS was not authorized to initiate foreclosure proceedings; (2) violation of the Consumer Protection Act (CPA), based on Wells Fargo's conduct during the loan modification process and on the conduct of MERS, NWTS, Wells Fargo, and HSBC regarding the identity of the deed of trust beneficiary; (3) negligence, based on a duty of care arising from the CPA; (4) quiet title on their property because the transfer of their promissory note into a security pool discharged the note; and (5) declaratory relief.

We hold that (1) the Velascos cannot bring DTA claims as a matter of law because no party has foreclosed on their property, (2) the trial court erred in granting summary judgment on the Velascos' CPA claim against Wells Fargo because there is a genuine issue of material fact as to whether Wells Fargo's loan modification conduct was unfair or deceptive, (3) the trial court properly dismissed the remainder of the Velascos' CPA claims because they failed to demonstrate that there were unfair or deceptive practices and/or that there was a causal link between the act and their alleged damages, (4) the trial court properly dismissed the Velascos' negligence claim because the respondents did not owe them a duty of care, (5) the trial court properly dismissed the Velascos' quiet title claim because the transfer of their promissory note into a security pool did not discharge their note, and (6) the Velascos waived their declaratory relief claim by failing to present argument on it.

Accordingly, we reverse the trial court's summary judgment dismissal of the Velascos' CPA claim against Wells Fargo relating to the loan modification process, but we affirm the trial court's summary judgment dismissal of all the Velascos' remaining claims.

## FACTS

*Promissory Note and Deed of Trust*

In June 2007, the Velascos borrowed $577,400 from ComUnity Lending to refinance their property in Lewis County, and they executed a promissory note for the loan. The note was secured by a deed of trust, which listed the Velascos as borrowers, ComUnity as lender, MERS as beneficiary, and Lewis County Title Company as trustee. The deed of trust provided for the trustee's nonjudicial foreclosure of the property if the Velascos defaulted on the promissory note.

A few weeks later, ComUnity indorsed the note to Wells Fargo. At all relevant times in this case, Wells Fargo was the Velascos' loan servicer. Wells Fargo apparently was acting as HSBC's agent. At some point, ownership of the loan was transferred to the "WFMBS 2007-011 trust," of which HSBC was the trustee. Clerk's Papers (CP) at 60. Wells Fargo retained possession of the promissory note. In January 2012, Wells Fargo indorsed the promissory note in blank. But Wells Fargo still had possession of the promissory note at the time of the summary judgment motion.

*Initial Loan Modification Process*

Mark Velasco submitted a lengthy declaration describing the circumstances surrounding the Velascos' claims. In December 2007, catastrophic flooding in Lewis County impacted the

3

Velascos' ability to make their January 2008 loan payment. Mark[1] contacted Wells Fargo and was informed that the Velascos did not need to make another payment for 90 days because they were victims of a natural disaster. When Mark received the March 2008 statement in mid-February, it showed that the Velascos were required to pay the three missed payments in a balloon payment along with their March payment. Mark claims that he was not informed that they would need to make a balloon payment if they suspended payments for 90 days.

The Velascos had not recovered financially by March 2008, so Mark contacted Wells Fargo in an attempt to modify their mortgage. Wells Fargo told him to file a financial hardship letter with Wells Fargo's Loss Mitigation Department, which he did. Wells Fargo also told Mark not to make their monthly payments because that would negatively impact Wells Fargo's review process of their financial documents. Following Wells Fargo's review process, the Velascos were put on a 90-day payment plan, also known as a "Special Forbearance Agreement." CP at 201. Under this agreement, the Velascos were required to pay the full amount of the loan payments ($3,127.58) for June, July, and August of 2008 to be considered for a loan modification

In August 2008, Mark informed Wells Fargo that the Velascos could not make a required balloon payment on September 1. Wells Fargo instructed the Velascos to resubmit their financial statements and draft a new hardship letter, which they did on August 26. Wells Fargo stated that once it received this information it would determine whether the Velascos qualified for a loan modification. When Mark called two weeks later, Wells Fargo told him that the

---

[1] For clarity, we refer to Mark Velasco by his first name. No disrespect is intended.

Velascos' house had been put into foreclosure status because they had broken the plan. Wells Fargo also referred to the fact that the Velascos had not made the required balloon payment.

Mark challenged the foreclosure status, questioning how Wells Fargo could put the Velascos into foreclosure when they were in the middle of the loan modification process. Wells Fargo continued to state that the foreclosure was started because the Velascos had broken the plan. Later Mark discovered that the real reason Wells Fargo had started the foreclosure was that it had not received the updated financial information the Velascos had faxed. Mark discovered that the fax number he had been using since March 2008 to send information had been changed but was still accepting faxes.

*Foreclosure Proceedings*

On October 15, 2008, NWTS – as the authorized agent of HSBC – sent the Velascos a notice of default. At that time, NWTS had not yet been appointed as the successor trustee of the deed of trust.

On November 17, 2008, MERS, as the purported deed of trust beneficiary, executed an assignment of its beneficial interest in the Velascos' deed of trust to "HSBC Bank USA, National Association, as Trustee for WFMBS 2007-011." CP at 193. Earlier, on November 3, 2008, Wells Fargo, as agent of HSBC, had appointed NWTS as the successor trustee under the deed of trust. Both of these documents were recorded on November 19, 2008.

When the Velascos did not cure their default, NWTS recorded a notice of trustee's sale in December 2008, which scheduled a foreclosure sale of the property for March 2009. Mark began contacting attorneys and filed a claim with the Office of the Comptroller of the Currency

5

(OCC) to challenge the foreclosure. For reasons that are not in the record, the trustee's sale later was postponed indefinitely.

*Subsequent Loan Modification Activities*

The Velascos entered into a second 90-day special forbearance agreement for April, May, and June of 2009 in which they made payments of $2,000 per month. Wells Fargo told Mark that once they completed the plan, there would be another loan modification review. A Wells Fargo employee told Mark that she was in direct contact with the investors who owned the loan, so a decision could be made quickly. The Velascos then were put on a third 90-day forbearance agreement starting in July 2009 with monthly payments of $2,588.51 and a fourth 90-day plan starting October 2009 with monthly payments of $3,067.44. But Wells Fargo never offered them a permanent loan modification. Wells Fargo continued to state that it was denying the Velascos' applications for loan modifications because the investors would not allow modification. Wells Fargo claimed that it did not have the ability to make decisions on the loan.

In February 2010, NWTS recorded a discontinuance of the trustee's sale cancelling the foreclosure sale. The record does not show why the foreclosure proceedings were cancelled.

The Velascos contacted OCC at least twice regarding their complaints over the summer of 2010. Following OCC's request, Wells Fargo sent the Velascos a response regarding their "rescission and loan modification requests." CP at 284. The record is unclear as to the effect of these communications.

*Lawsuit and Summary Judgment*

Mark alleges that he eventually learned that Wells Fargo had lied to him about their ability to obtain a loan modification. He learned that their loan had been securitized in the WFMBS 2007-011 trust, which was funded by Wall Street investors. Therefore, it would have been impossible for Wells Fargo to have consulted with the investors. Further, Mark learned that the servicing agreement between the investors and Wells Fargo granted Wells Fargo the ability to modify the terms of the loan if a default was reasonably foreseeable.

In April 2011, the Velascos filed suit against Wells Fargo, HSBC, MERS, and NWTS asserting claims for violation of the DTA and CPA, negligence, quiet title, and declaratory relief. After discovery, Wells Fargo, MERS, HSBC and NWTS moved for summary judgment in September 2013. The trial court granted the motion and dismissed all of the Velascos' claims.

The Velascos appeal.

## ANALYSIS

A.    STANDARD OF REVIEW

The trial court dismissed all of the Velascos' claims on summary judgment. We review a trial court's order granting summary judgment de novo. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). A genuine issue of material fact exists where reasonable

7

minds could differ on the facts controlling the outcome of the litigation. *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 649, 336 P.3d 1112 (2014).

B.    VIOLATION OF THE DEED OF TRUST ACT

The Velascos argue that NWTS violated the DTA because it acted both as the beneficiary and as the trustee and undertook actions as a trustee before the appointment of successor trustee was recorded. They argue that MERS and HSBC violated the DTA because MERS's assignment of the deed of trust to HSBC was invalid. They also generally assert that Wells Fargo violated the DTA. We hold that the trial court properly dismissed the Velascos' DTA claims because no party actually has foreclosed on their property.

In *Frias v. Asset Foreclosure Services Inc.*, our Supreme Court held that a plaintiff could not maintain a claim for monetary damages under the DTA in the absence of a completed foreclosure sale of the property. 181 Wn.2d 412, 422, 334 P.3d 529 (2014). In this case, the record shows that there has been no completed foreclosure of the Velascos' property. Accordingly, based on *Frias* we hold that the Velascos cannot bring claims for damages under the DTA, and we affirm the trial court's summary judgment dismissal of the Velascos' DTA claims.[2]

---

[2] The trial court dismissed the Velascos' DTA claim on other grounds. However, we can affirm the trial court on any basis. *Rainier View Court Homeowners Ass'n, Inc. v. Zenker*, 157 Wn. App. 710, 723, 238 P.3d 1217 (2010) (stating that an appellate court "may sustain a trial court on any correct ground, even one the trial court did not consider.").

C.      VIOLATION OF THE CONSUMER PROTECTION ACT

The Velascos argue that each of the defendants violated the CPA. We hold that the Velascos presented sufficient evidence to create a material issue of fact regarding whether Wells Fargo's loan modification conduct violated the CPA, but not regarding whether Wells Fargo's other conduct violated the CPA or whether MERS, HSBC, or NWTS violated the CPA.

1.      Elements of CPA Claim

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Under RCW 19.86.090, any person injured in his or her business or property by a violation of RCW 19.86.020 may bring a civil action to recover actual damages. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009). To prevail on a CPA claim, a plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Id.* Whether a plaintiff can prevail on a CPA claim is a case by case determination of whether the plaintiff can satisfy each of the five elements. *Lyons*, 181 Wn.2d at 785. A CPA claim based on alleged DTA violations must meet the same requirements. *Id.*

Here, the respondents do not dispute for summary judgment purposes that their conduct occurred in trade or commerce or that their conduct affects the public interest.[3] Instead, they

---

[3] In *Bain v. Metropolitan Mortgage Group Inc.*, our Supreme Court recognized that because MERS was involved with "an enormous number of mortgages in the country (and our state)," its conduct would satisfy the public interest impact element of a CPA claim. 175 Wn.2d 83, 118, 285 P.3d 34 (2012).

argue that they did not engage in any unfair or deceptive practices, that their conduct did not cause the Velascos to incur any economic loss, and that the Velascos cannot establish that any alleged unfair or deceptive practices caused an economic injury. Accordingly, we only address those elements of the CPA claims.

     a.    Unfair or Deceptive Act or Practice

A plaintiff can establish an unfair or deceptive act or practice by showing "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). The legislature has defined certain violations of the DTA as unfair or deceptive acts or practices. RCW 61.24.135(2).[4] However, the Velascos do not argue that there is a per se unfair or deceptive act here. Therefore, we must determine whether the conduct identified by the Velascos has the capacity to deceive substantial portions of the public or is in violation of public interest. *Klem*, 176 Wn.2d at 787.

Conduct is "deceptive" under the CPA if it misleads or misrepresents something of material importance. *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 318, 308 P.3d 716 (2013). Neither intent nor actual deception is required to prove a deceptive act. *Bain v. Metro. Mortg. Grp.*, 175 Wn.2d 83, 115, 285 P.3d 34 (2012). The question is whether the conduct has

---

[4] "It is . . . an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163; (b) fail to comply with the requirements of RCW 61.24.174; or (c) fail to initiate contact with a borrower and exercise due diligence as required under RCW 61.24.031."

the *capacity* to deceive a substantial portion of the public. *Id.* Even accurate information may be deceptive if a representation, omission, or practice is likely to mislead. *Id.*

Whether conduct is unfair or deceptive is a question of law, not a question of fact. *Lyons*, 181 Wn.2d at 786. But whether conduct has the capacity to deceive is a question of fact. *Walker*, 176 Wn. App. at 318.

      b.    Injury to Person's Business or Property

A CPA plaintiff must establish an injury to the person's business or property. The injuries compensable under the CPA are "relatively expansive." *Frias*, 181 Wn.2d at 431. Quantifiable monetary loss is not required. *Id.* The injury requirement is met upon proof the plaintiff's " 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.' " *Panag*, 166 Wn.2d at 57 (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). "Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA." *Walker*, 176 Wn. App at 320.

On the other hand, personal injuries such as mental distress, embarrassment, and inconvenience, and the financial consequences of such injuries, do not satisfy the injury to business or property element. *Frias*, 181 Wn.2d at 431. Further, having to prosecute a claim under the CPA is insufficient to show injury. *Panag*, 166 Wn.2d at 60.

Whether a CPA claimant has suffered injury to business or property is a question of fact. *See id.* at 65.

11

c. Causation

A CPA plaintiff must establish that the defendant's conduct caused the alleged injury. Our Supreme Court has adopted the proximate cause standard embodied in WPI 15.01.[5] *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 82-83, 170 P.3d 10 (2007). Under this standard, to prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Id.* at 84. Causation is a question of fact. *Klem*, 176 Wn.2d at 795.

2. Claims Against Wells Fargo – Loan Modification

The Velascos argue that Wells Fargo violated the CPA during the loan modification process by (1) misrepresenting that the "investors" would not allow modification when in fact Wells Fargo had authority to modify the loan, and (2) deceiving them by repeatedly requesting information and requiring forbearance payments pursuant to their loan modification request when Wells Fargo never intended to modify the loan. We hold that the Velascos produced sufficient evidence to create a genuine issue of material fact on this issue.

a. Unfair or Deceptive Practices

First, the Velascos allege that Wells Fargo representatives told Mark that the Velascos could not obtain a loan modification because investors in the WFMBS 2007-11 trust would not allow it. However, Mark discovered that the servicing agreement between Wells Fargo and the investors states that "[w]ith the prior written consent of the master servicer, the servicer may modify the terms of a Mortgage loan which is in default or a Mortgage Loan as to which default

---

[5] 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 15.01, at 181 (5th ed. 2005).

is reasonably foreseeable." CP at 296. Wells Fargo is identified as both the Master Servicer and the Servicer in the servicing agreement. Therefore, there is sufficient evidence to create a question of fact that Wells Fargo misrepresented the reason it repeatedly refused to process the Velascos' loan modification request. Further, the evidence supports at least an inference that Wells Fargo misrepresented that it had communicated with the investors of the trust regarding the loan modification request.

Second, the Velascos allege that Wells Fargo forced them to endure a drawn out loan modification process when it never intended to modify the loan. If this allegation was true, it could be characterized as an unfair or deceptive act. The Velascos present no direct evidence that Wells Fargo had no intent to modify their loan, but the issue is whether the evidence gives rise to a reasonable inference of that fact. The Velascos allege that Wells Fargo repeatedly gave false reasons for not processing the Velascos' loan modification request and continued to offer the Velascos temporary forbearance plans without ever offering a permanent modification. Given this evidence, it is reasonable to infer that Wells Fargo never intended to modify the Velascos' loan. Such an inference is sufficient to create a question of fact.

We hold that the Velascos produced sufficient evidence to create a genuine issue of material fact as to whether Wells Fargo engaged in unfair and deceptive conduct during the loan modification process.

b. Economic Injury and Causation

Mark's declaration contains only two sentences on injury. He alleges that the Velascos "have spent hundreds of hours writing letters, making phone calls and doing research in order to find a way to save our home" and that they have "spent thousands of dollars in legal fees." CP at

13

210. The first statement does not allege injury under the CPA because there is no indication of any economic loss. However, the second statement clearly alleges economic loss.

The question here is causation. Fees incurred bringing the CPA claim are insufficient to show an economic injury. *Panag*, 166 Wn.2d at 60. Therefore, only those fees incurred apart from the CPA litigation constitute an economic injury under the CPA. Here, there is evidence in the record that the Velascos hired an attorney to challenge Wells Fargo's conduct and to fight the foreclosure actions triggered by Wells Fargo's refusal to fairly process the Velascos' loan modification requests. This evidence is sufficient to create a genuine issue of fact regarding the causal connection between Wells Fargo's unfair or deceptive acts and the Velascos' payment of attorney fees.

Because questions of fact exist regarding unfair or deceptive conduct, injury, and causation, we hold that the trial court erred in granting summary judgment in favor of Wells Fargo on the Velascos' CPA claim regarding the loan modification process.

3. Claims Against Wells Fargo – Deed of Trust

The Velascos argue that Wells Fargo also violated the CPA by claiming to be the beneficiary of the deed of trust after the closing of the WFMBS 2007-11 trust. We hold that the Velascos' contentions with regard to the WFMBS 2007-11 trust fail to demonstrate an unfair or deceptive act.

Although the Velascos' argument is somewhat unclear, it seems to contain two separate contentions: (1) Wells Fargo was not validly appointed as the deed of trust beneficiary, and (2) even if Wells Fargo was a valid beneficiary, it was improperly appointed after the closing date of the WFMBS 2007-11 trust. The record does not support either contention.

14

First, Wells Fargo was the actual holder of the promissory note. Therefore, under RCW 61.24.005(2), Wells Fargo was the valid beneficiary of the deed of trust. *Bain*, 175 Wn.2d at 98-99. It did not have to rely on any assignment to obtain beneficiary status.

Second, the Velascos essentially argue that Wells Fargo's claim of beneficiary status after the closing date of the WFMBS 2007-11 trust was unfair or deceptive. The Velascos contend that Wells Fargo's claim that it was the beneficiary created confusion and prevented them from identifying the owner of the note, prevented their direct communication with the lender, and "served the purpose of creating a default that the Velascos could not cure." Br. of Appellant at 22. But the Velascos failed to bring forward any evidence to support this argument. While they argued that the transfer of their loan into the WFMBS 2007-11 trust precipitated unfair or deceptive acts by Wells Fargo and others, the Velascos failed to show the basic fact that their loan had even been transferred into the trust. In addition, they failed to produce evidence of the closing date of the trust. Consequently, even had the trial court found that it was improper to appoint Wells Fargo the beneficiary after the closing date of the WFMBS 2007-11 trust, there were insufficient facts in the record to create a genuine issue of material fact on this issue.

We hold that the Velascos did not present sufficient evidence to create a question of fact that Wells Fargo engaged in unfair or deceptive acts with regard to the deed of trust. Therefore, we affirm the trial court's summary judgment dismissal of the Velascos' CPA claim against Wells Fargo based on the deed of trust.

15

4.  Claims Against MERS

The Velascos argue that MERS violated the CPA by acting as the beneficiary of the deed of trust when it was not the holder of the promissory note. We hold that these facts could establish an unfair or deceptive act, but that the Velascos did not produce sufficient evidence to create a genuine issue of fact that MERS's conduct caused economic injury to them.

a.  Unfair or Deceptive Act

The Velascos' deed of trust identified MERS as the beneficiary. And MERS assigned its beneficial interest in the deed of trust to HSBC. However, the DTA defines a beneficiary of a deed of trust as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). The evidence here shows that Wells Fargo was the holder of the note at all relevant times, and there is no evidence that MERS ever was the holder. Therefore, MERS was not a lawful beneficiary of the deed of trust. *Bain*, 175 Wn.2d at 99.

In *Bain*, our Supreme Court stated that characterizing MERS as a beneficiary when it was not the note holder had the capacity to deceive, and therefore presumptively met the unfair or deceptive practice requirement of the CPA. *Id.* at 117. Under *Bain*, we hold that the Velascos produced sufficient evidence to create a question of fact that MERS engaged in unfair or deceptive practices.

b.    Economic Injury and Causation

As stated above, the Velascos produced evidence that they incurred attorney fees as a result of the initiation of foreclosure proceedings. However, the Velascos produced no evidence that *MERS's* conduct had anything to do with the foreclosure proceedings. [6] Further, although MERS may have engaged in unfair or deceptive conduct by acting as the beneficiary of the deed of trust when it was not the holder of the promissory note, there is no evidence that this conduct caused any injury. Accordingly, we hold that the Velascos did not produce sufficient evidence to create a question of fact on the causation element, and that the trial court did not err in dismissing the Velascos' CPA claims against MERS.

5.    Claims Against NWTS

The Velascos argue that NWTS violated the CPA because (1) an NWTS employee also was an officer of MERS, and (2) NWTS sent the Velascos a notice of default before it was appointed as successor trustee. We hold that even when viewed in the light most favorable to Velascos, neither of these acts was unfair or deceptive.

a.    Common Employee of NWTS and MERS

The Velascos point out that a person named Jeff Stenman, who was an NWTS employee, also signed the deed of trust assignment from MERS to HSBC as a vice president of MERS. The

---

[6] In the Velascos' brief, they argue that they incurred "investigative expenses, legal fees, and loss of work time, as well as additional late fees, inspection fees, and damage to credit" based on MERS' conduct. Br. of Appellant at 25. However, other than the legal fees there is no *evidence* that they incurred these expenses. And there is no *evidence* that they incurred any expenses as a result of MERS's conduct. Bare allegations cannot create a genuine issue of material fact. *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n*, 184 Wn. App. 593, 337 P.3d 1131, 1136 (2014).

17

Velascos contend that this conduct violated RCW 61.24.020, which prohibits the same entity serving as both trustee and beneficiary under the same deed of trust, and therefore was unfair or deceptive. We disagree.

We need not address whether the violation of RCW 61.24.020 can constitute an unfair or deceptive practice for two reasons. First, as discussed, MERS was not the beneficiary under this deed of trust because it was not the holder of the promissory note. Therefore, NWTS's employment of a MERS officer could not have resulted in NWTS acting as both the trustee and beneficiary.

Second, MERS's assignment of its beneficial interest in the deed of trust was recorded on the same day as the appointment of NWTS as successor trustee. Therefore, even if MERS was a lawful beneficiary, it was not the trustee at the same time that MERS was the beneficiary.

We reject the Velascos' argument that NWTS engaged in an unfair or deceptive practice solely because NWTS and MERS had a common employee.

      b.   NWTS's Authority to Send Notice of Default

The Velascos argue that NWTS's conduct was unfair or deceptive because NWTS sent the Velascos a notice of default before NWTS's appointment as successor trustee. We disagree.

Under RCW 61.24.031(1)(a), a trustee, beneficiary, or authorized agent has authority to send a notice of default of a deed of trust. NWTS did send the Velascos a notice of default on October 15, 2008, before NWTS had been appointed successor trustee. However, NWTS was not acting as the trustee when it sent the notice of default. Instead, the notice of default stated that the beneficiary – HSBC – was sending the notice and that NWTS was signing the notice as HSBC's "duly authorized agent." CP at 183.

Under these circumstances, it is irrelevant that NWTS had not been appointed as a successor trustee when it sent the notice of default to the Velascos. NWTS was authorized under RCW 61.24.031(1)(a) as the beneficiary's agent to send the notice. Therefore, we hold that NWTS did not engage in an unfair or deceptive practice by sending the notice of default.

Because we hold that the Velascos did not produce sufficient evidence to create a genuine issue of material fact that NWTS engaged in unfair and deceptive practices, we affirm the trial court's summary judgment dismissal of the Velascos' CPA claims against NWTS.

6.    Claims Against HSBC

The Velascos' brief states in a heading that the actions of Wells Fargo and HSBC were deceptive, but then only addresses Wells Fargo's conduct. The Velascos do not expressly argue that HSBC engaged in unfair or deceptive conduct, and do not cite to the record or any authority to support such an argument. Further, although the Velascos assert that HSBC is liable under the CPA based on Wells Fargo's conduct, they provide no argument and cite no authority to support this claim. As a result, we hold that the Velascos have waived any such argument. RAP 10.3(a)(6); *Granville Condo. Homeowners Ass'n v. Kuehner*, 177 Wn. App. 543, 555, 312 P.3d 702 (2013) (refusing to further address issue where party failed to present sufficient argument or citation to authority). Therefore, we affirm the trial court's summary judgment dismissal of the Velascos' CPA claims against HSBC.

D. NEGLIGENCE

The Velascos argue that each of the defendants is liable for negligence in breaching their independent duties owed to the Velascos under the CPA. We hold that a CPA violation does not give rise to a cause of action for common law negligence.[7]

A negligence action may proceed only if the plaintiff shows (1) a duty of care was owed to them by the defendant, (2) that duty was breached, (3) that breach was the cause of their harm, and (4) they suffered injury as a result. *Keller v. City of Spokane*, 146 Wn.2d 237, 242-43, 44 P.3d 845 (2002). The issue here is the existence of a duty, which is a question of law that we review de novo. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 448, 128 P.3d 574 (2006).

The Velascos' only argument is that the respondents' negligence duty arises from the CPA. Specifically, the Velascos devote one sentence in their opening brief to this issue, which states only that the CPA "prohibits unfair or deceptive business practices in the course of trade or commerce, and this is a statutory duty that clearly applies to these Respondents." Br. of Appellant at 31.

The Velascos do not cite any authority that the CPA gives rise to the existence of a general duty of care. Nor has independent research discovered any precedent holding that the CPA gives rise to this purported additional duty of care. Accordingly, we hold that the Velascos'

---

[7] The respondents argue that the Velascos' negligence claim is barred by the independent duty doctrine. However, under *Elcon Construction, Inc. v. Eastern Washington University*, 174 Wn.2d 157, 165-66, 273 P.3d 965 (2012), we are constrained from applying the doctrine to cases other than those involving real property or construction. *See Hendrickson v. Tender Care Animal Hosp. Corp.*, 176 Wn. App. 757, 770-71, 312 P.3d 52 (2013), *review denied*, 179 Wn.2d 1013 (2014).

20

have failed to demonstrate that the respondents owed them a duty of care, and therefore that the trial court did not err in dismissing the Velascos' negligence claim on summary judgment.

E.    QUIET TITLE CLAIM

The Velascos argue that the trial court erred in dismissing their quiet title claim because the transfer of their promissory note into a mortgage-backed securities pool discharged the note. We disagree because Washington law does not provide that transfer of the note into a mortgage-backed securities pool discharges the Velascos' debt obligation on the note.

An action to quiet title is an equitable proceeding designed to resolve competing claims of property ownership. *Walker*, 176 Wn. App. at 322. A borrower can maintain a quiet title action against a beneficiary of a deed of trust only if the debt that the deed of trust secures is discharged. *Evans v. BAC Home Loans Servicing LP*, No. c10-0656-RSM, 2010 WL 5138394, at *3 (W.D. Wash. Dec. 10, 2010). The Velascos do not argue that they have paid their underlying debt obligation to discharge the note under RCW 62A.3-601(a). Instead, they assert that they have superior title in this case because the transfer of the promissory note into a mortgage-backed securities pool discharged the note, and therefore discharged the Velascos' debt obligation.

The Velascos cite no authority to support their argument. And although Washington courts have yet to address this issue, several federal courts have addressed and rejected the argument that securitization inherently changes the legal relationship between the parties to a promissory note and deed of trust.[8]

---

[8] *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been

21

We hold that securitization does not discharge the Velascos' obligation to pay the promissory note. The reason for this holding was explained by the Ninth Circuit Bankruptcy Appellate Panel:

> [H]ome loan borrowers are not purchasing an investment when they enter into a loan agreement to purchase or refinance a home. When they sign a promissory note and mortgage or trust deed secured by their real property, they are entering into a contract for a loan transaction on fixed terms, and any "upside" or investment incentive to enter into the transaction is based on a prospective increase in the value of the subject real property. Accordingly, the borrower's loan contract (the Note and Trust Deed in this appeal) is distinct and separate from any securities transaction in the "secondary market" encompassing assignment of the contract.

*In re Nordeen*, 495 B.R. 468, 479-80 (B.A.P. 9th Cir. 2013).

Here, the Velascos have not shown that they have discharged their loan obligation by paying their debt. Nor have they cited to authority showing that the transfer of their promissory note into a securities pool discharges that note. Therefore, we hold that the Velascos do not have superior title, and that the trial court did not err in dismissing their quiet title claim on summary judgment.

F.    DECLARATORY RELIEF

The Velascos do not address their claim for declaratory relief in their briefs, aside from listing it as one of their causes of action. Accordingly, we hold this assignment of error is

---

rejected by many district courts."); *see also Kuc v. Bank of Am., NA*, No. CV-12-08024-PCT-FJM, 2012 WL 1268126, at *3 (D. Ariz. Apr. 16, 2012) ("[T]he theory that securitization renders the Deed of Trust unenforceable has been repeatedly rejected."); *White v. IndyMac Bank, FSB*, No. 09-00571 DAE-KSC, 2012 WL 966638, at *6 (D. Haw. Mar. 20, 2012) ("The argument that parties lose their interest in a loan when it is assigned to a securitization trust or REMIC has been rejected by numerous courts."); *Washburn v. Bank of Am., N.A.*, No.1:11-cv-00193-EJL-CWD, 2011 WL 7053617, at *5 (D. Idaho Oct. 21, 2011) ("This is not a new battlefield. Several courts have rejected various theories that securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach." (internal quotation marks omitted)).

waived. RAP 10.3(a)(6); *see also State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (absent supporting argument or citations to relevant authority, an assignment of error is waived).

We reverse the trial court's summary judgment dismissal of the Velascos' CPA claim against Wells Fargo relating to the loan modification process, but affirm the trial court's dismissal of all of the Velascos' remaining claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

MELNICK, J.